JACOB M. TEWKSBURY *v.* PETER MAGRAFF.

ESTOPPEL TO DISPUTE LANDLORD'S TITLE BY TENANT.—The general rule is, that a tenant cannot dispute his landlord's title, and that the estoppel continues to the end of the tenant's occupation, unless there has been a repudiation of the tenancy, and a subsequent adverse holding by the tenant, and then until the Statute of Limitations has run in his favor.

IDEM.—A tenant cannot set up against his landlord an outstanding title, without first surrendering possession.

WHEN TENANT NOT ESTOPPED.—Where, in taking the lease, he was deceived and imposed upon by the lessor; where he has been ousted by title paramount; where the lessor's title has ceased; where he has acquired his landlord's title by purchase from him, or at a judicial sale, or by a redemption; where the action is by the vendee of his landlord, he may dispute the derivative title; where he did not take possession under the lease, but was in possession at the time he took the lease—perhaps also when there has been a mutual mistake as to the law in relation to the title of the lessor.

DEFECTIVE FINDING.—Where material facts are not found, it will be presumed on appeal that they were consistent with the judgment.

PRACTICE IN RELATION TO FINDINGS.— The Court should require each party to submit such questions of fact as he desires answered, and the Court should then answer them from the evidence before announcing its judgment.

APPEAL from the District Court, Fifteenth Judicial District, Contra Costa County.

This was an action of ejectment, and for the recovery of damages. The complaint alleges plaintiff's seizin of a tract of land described, in Contra Costa County, and his ouster therefrom by defendant. The answer denies all the allega-

tions, and as a further defence, sets up in defendant a cotenancy with the other owners of the "San Pablo Ranch," of which the demanded premises constitute a part.

The cause was tried before the Court without a jury. The following are the material facts found by the Court, in addition to those stated in the opinion of this Court, to wit:

That on the 28th day of November, 1865, the plaintiff, by a written demand served upon the defendant on the premises demanded and described in the complaint, demanded possession thereof, which demand was then and there refused by the defendant.

That the plaintiff hath sustained damages for the rents and profits of said premises, and for the detention of his interest therein by the defendant since said demand, in the sum of three hundred dollars.

That on the 27th day of November, 1859, Margaret Magraff, wife of the defendant, and one Edward M. Birdsale, father of the said Margaret, as tenants, executed a written lease of the demanded premises to one John H. Saunders as landlord.

That on the 27th day of December, 1859, the defendant, Peter Magraff, as tenant, also executed a written lease of the premises described in the complaint to the said John H. Saunders, as landlord.

That thereafter, and prior to the lease hereinbefore mentioned from the plaintiff to the defendant, the said John H. Saunders conveyed to the plaintiff all his interest in the demanded premises, and assigned the two last mentioned leases.

That prior to the commencement of this action, and subsequent to the demand made, as hereinbefore stated, by the plaintiff upon the defendant for the possession of the described premises, the defendant received a deed, duly executed to him by one J. T. Wright, which deed purported to convey an undivided interest in the demanded premises, derived originally from one Juan B. Alvarado, and Martina, his wife, claiming to be owners of an undivided interest in

the Ranch of San Pablo, of which ranch the demanded premises were a part.

The plaintiff had judgment in the District Court that he do have and recover of and from the defendant the possession of the demanded premises *with the defendant,* and three hundred dollars damages for the rents and profits, and for the detention thereof, and for costs, etc.

The plaintiff appealed from the whole judgment, save that portion which adjudges damages and costs to the plaintiff.

The other facts are stated in the opinion of the Court.

*M. S. Chase,* for Appellant.

I. As plaintiff's lessee, defendant was estopped by his lease from any impeachment of his landlord's title.

II. Had defendant ever become plaintiff's cotenant while also his tenant, such cotenancy could not help defendant to avoid surrender of the possession to the plaintiff according to the terms of the lease or to the law of the tenancy.

1. The general principle of estoppel is not more elementary in morals than axiomatic in law.

" A man shall always be estopped by his own deed, or not permitted to aver or prove anything in contradiction to what he has once so solemnly and deliberately avowed." (Black. Com., Vol. II, p. 295.)

" It is a general rule, founded on reasons of public policy, that a tenant shall never be permitted to controvert his landlord's title." (Taylor's L. & T., 493.)

" A tenant may not dispute his landlord's title, for he is estopped from changing by his own act the character and effect of his tenure." (1 Parsons on Conts., 427.)

" In the case of a tenant, the policy of the law will not permit him to contest the title of his landlord." (*Rainde* v. *Kent*, 2 Cal. 560.)

Yet, while text book and authority concur in thus announcing the principle, we fail not to find several qualifications of and exceptions to the rule. But all such qualifications and

exceptions, it is believed, will be stated when, as now, it is conceded that a lessee is not estopped by his lease from showing that he entered into it through force, fraud, imposition or misrepresentation practiced on him by his lessor, or possibly through mistake alone on his own part, or that his lessor's *entire* interest in the premises demised has become *wholly* ended or merged or vested in another, even though the lessee himself, and this, too, whether by operation of law or by the voluntary act of the lessor. (Taylor L. & T., 493 and notes; Parson's Cont., Vol. I, p. 427 and notes; Green Ev., Vol. II, Sec. 305 and notes.) But the record herein, while disclosing neither allegation, proof, finding or pretence that any of the above qualifications or exceptions were, upon the facts, applicable to the case at bar, on the other hand affirmatively shows that the lease was both valid and subsisting, and that by virtue thereof alone was the plaintiff adjudged entitled to damages, and to be let into joint possession with the defendant. " The general rule is founded on presumption of the lease being taken without fraud, force or illegal behavior on the part of the lessor." (*Hamilton* v. *Marsden*, 6 Binn. 45.) The law and the facts therefore concur in excluding the defendant from all claim to any qualification of or exception to the general principle before stated.

2. But had defendant, while lessee of the plaintiff, become by his own act the plaintiff's cotenant, he could not thereby, before surrender of possession, in the least evade the terms of the lease, or change the character, the obligation, or the condition of his tenure under it. Whether defendant entered before or under the lease is immaterial, since the Court finds he occupied as tenant of the plaintiff.

It is urged, however, on behalf of defendant, that where a lessee, by his own voluntary act, during the continuance of the lease under which he occupies, becomes a cotenant with his lessor, that he then, to the extent of his title thus acquired, can dispute the title of his lessor. This proposition was adopted by the Court, and became the base of that portion of the judgment which is here for review and reversal.

In support of such a doctrine it is submitted neither principle nor authority can be found. Under the sanction of such a doctrine a lessor's rights when leasing but his "share" in the common property would become but the mere sport of the lessee, subject to utter defeat at his veriest whim and caprice. While it is true theoretically, that a cotenant in possession holds for his companions, and that a lease does not estop a tenant from purchasing the term or the reversion of his landlord, or the right of his landlord's cotenant, it would seem equally indisputable that such purchase by the tenant would be *cum onere* and subject to the full operation of the lease, save in so far as the same may have been modified or changed by the act of the lessor. In other words, the terms of an honest lease cannot be changed by the mere act of the lessee; as Parsons says, (*ut sup.*) " he is estopped from changing by his own act the character and effect of his tenure." The lease, in effect, says to him, you have solemnly covenanted to surrender to your lessor the demised premises upon the expiration of the term, and no act of your mere volition shall help you to break that covenant; if your possession under the lease shall be threatened, your lessor shall defend you; if he fails in the defence you may attorn to the victor; if he prevails, you must at all events, when the term ends, or upon demand, surrender to him; and if in the interim you have become co-owner with him, you may, *after* such surrender, but *never before*, assert your full rights as his cotenant. (See, also, *Bleght's Lessee et al.* v. *Rochester*, 7 Wheat. 535; *Cuthbertson* v. *Irving*, 4 Hurl. & Nor. 742.)

*E. W. McKinstry*, for Respondent.

When this action was brought, the defendant was a cotenant of the plaintiff, holding under the same title.

If the lease was an admission that plaintiff was the sole owner of the premises, the term had expired. The lessee is estopped only during the term. (*Carpenter* v. *Thompson*, 3

N. H. 204.) "By making the lease, the estoppel doth grow, and by the end of the lease the estoppel determines."

The doctrine is not applied where the tenant disclaims the landlord's title, and holds over; and the law is "settled" that the tenant may disavow and disclaim. (*Zeller* v. *Eckert*, 4 How. U. S. 295; 1 Hilliard on Real Prop. 218.)

Here the defendant absolutely refused to surrender possession to plaintiff upon formal demand; thus explicitly, and without qualification, disclaiming the latter's title. In such case, the landlord may bring ejectment at once, but he cannot take advantage of the tenancy. (1 Parsons on Contracts, 428, note *a*.) At common law a tenant holding over was regarded as a tenant at sufferance—an estate which could be destroyed at any time by the entry of the landlord, or by some public and avowed act amounting to a declaration that the tenant's continuance was tortious. (2 Black. Com. 150.) The only change, if any, in the common law by the statute of California is, that it dispenses with formal entry, and substitutes therefor a written demand. (*Uridias* v. *Morrell*, No. 2, 25 Cal. 35.) And if the relation of landlord and tenant be once dissolved, it cannot be restored except by a new contract. (28 Cal. 224.) Yet, while the former tenant remains in possession as a *mere trespasser*, he may purchase an undivided interest from the tenant in common, and thus immediately change his possession from a hostile to a friendly character. (*Carpentier* v. *Mendenhall*, 28 Cal. 487.)

There is no finding that defendant entered under, or that he paid rent to plaintiff or his grantors. (2 John. Cas. 223; Id. 353; 8 B. & C. 479.)

Plaintiff invokes the doctrine of estoppel. Estoppels are said to be "odious;" and well they may be, if we accept, literally, Lord Coke's definition: "An estoppel is where a man is concluded to say the truth." (Co. Litt. 353.)

This branch of the law, like every other, is to be reasonably treated. The principle upon which it rests is that every man is bound to act according to the fact of the case, and the law will not only presume that he has done so, but will

deny him the right to contradict such reasonable presumption. Hence, no man should be denied setting up the truth, unless it is in plain and clear contradiction to his former acts and allegations. As the effect may be to shut out the *real* truth by its artificial representative, estoppels, whether at law or in equity, are not favored or extended by construction. (*Pelletreau* v. *Jackson*, 11 Wend. 118; 13 Wend. 206; *Jones* v. *Sasser*, 1 Dev. & Batt., N. C., 464.)

The argument of plaintiff's counsel assumes that when a lease is made, the lessee is forever debarred from denying that the lessor was the sole owner in fee simple absolute of the lands demised. But the inquiry what, in fact, was the estate of the lessor, is necessarily involved in most cases where the lessee is permitted to prove that the estate has ceased. There can be no estoppel where an interest passes; and even where the lessee is estopped from showing that the lessor had no title, he may yet prove that he was entitled to a particular estate which has expired. (2 Smith's Cas., Hare & Wallace, 509.) · The principle has a present, and not a future operation. After the expiration of the lease, the tenant may assert any right he may have, though it be of such a character that he could not do so while the relation of landlord and tenant continued. That he may show that the landlord's title has expired, in whole or in part, there can be no doubt. (Authorities *supra;* Willard on Real Estate, 365; 5 Cow. 135; 6 Wend. 670.) He may prove the *nature* of the lessor's title, and make a defence not inconsistent with the original possession. (Adams on Eject., side page 276, and notes; *Camp* v. *Camp*, 5 Conn. 291.) He may set up a title under a judgment which overreaches his landlord's. (*Jackson* v. *Rowland*, 6 Wend. 670.)

The rule, as between landlord and · tenant, rests upon the ground of *equitable*, not common law estoppel; and equitable estoppels depend upon the circumstances of each particular case. (2 Smith's Cas., Hare & Wallace, 542; Id. 536.) Whether the defendant is estopped must depend upon the inquiry whether, under the circumstances of this case, the

claim he sets up is plainly inconsistent with the contract under which the possession was taken. (1 Hilliard on Real Prop. 219.) A common demise does not necessarily import anything more than a right of possession in the lessor for the term demised; and the tenant impliedly admits, only, that the landlord has such a title as authorizes him to lease the premises for the term. (8 Ala. 606; 3 N. H. 306.) And, in any case, the tenant is estopped only so long as the landlord's title remains the same as it was at the commencement of the lease. (6 Wend. 670.)

By the Court, SANDERSON, J. :

Whether a tenant can dispute his landlord's title depends upon a variety of circumstances. The general rule is that he cannot, and that the estoppel continues, not to the end of the term merely, but to the end of the tenant's occupation, or, where there has been a repudiation of the tenancy and a subsequent adverse holding by the tenant, until the Statute of Limitations has run in his favor. He cannot set up an outstanding title which he may have acquired. Before he can avail himself of such a title he must surrender the possession. (*Doe on the demise of Knight* v. *Smythe*, 4 M. & S. 348; *Greeno* v. *Munson*, 9 Vt. 37.) To say that he may set up an adverse title acquired by him to defeat a recovery by his landlord, after the term has expired, is to say that there is no estoppel, and that a tenant may always deny his landlord's title. (*Wilson* v. *Cleaveland*, 30 Cal. 201.) To allow a party to obtain possession by entering under a lease, and then to disclaim, either before or after the expiration of the term, would be to encourage the very fraud and chicanery which the estoppel was designed to prevent. The estoppel rests upon considerations of public policy which, for obvious reasons, would be defeated in its purpose if one who has been put in possession of land by another should be allowed to controvert the title of the latter without first restoring him

to as good a condition as he was in before he parted with the possession. (*Glen* v. *Gibson*, 9 Barb. 638.)

This general rule is, however, subject to several exceptions. One is where, in taking the lease, the lessee was deceived and imposed upon by the lessor (*Gleim* v. *Rise*, 6 Watts, 44.) So if the tenant has been ousted by title paramount he may plead it (*Hayne* v. *Maltby*, 3 Term. R. 441); also that the landlord's title has ceased or become extinguished (*Jackson* v. *Rowland*, 6 Wend. 666); or that he has acquired his landlord's title by purchase from him or at a judicial sale, or by a redemption. And if the action is brought by a vendee of the landlord the tenant may dispute the derivative title. (*Phillips* v. *Pearce*, 5 B. & C. 433; *Reray* v. *Cotter*, 29 Cal. 168.) So if the tenant did not take possession under the lease, but was in possession at the time he took his lease, he may dispute the landlord's title without first surrendering the possession; for not having received the possession from him, he is under no moral or legal obligation to restore it before adopting a hostile attitude, and he may have attorned, by mistake, to one who had no title. (*Cornish* v. *Searell*, 8 B. & C. 471.) To these exceptions may be added, possibly, the case where it appears affirmatively that both parties have acted under a mutual mistake as to the law in regard to the title of the lessor. (*Glen* v. *Gibson*, *supra*.)

The case comes here upon the findings alone, and although, as stated by counsel, they have been purposely elaborated with a view to an appeal, so that any necessity for a statement might be avoided, yet it is impossible for us to say whether the case comes under the general rule or falls within some one of the exceptions noted above. For instance: It does not appear from the findings whether the defendant was in possession before he leased from the plaintiff, or went in afterwards and under the lease. If he did not go in under the lease, he had a right to try the title, as we have seen; for not having received the possession from the plaintiff, the latter is in as good a position now as he was at the time he

executed the lease, which is all the benefit which the doctrine of estoppel is intended to secure. If the defendant was in possession at the time he took the lease, the plaintiff cannot say, " You must surrender possession to me before you can try title with me," because he cannot in the same breath add, " for you received the possession from me, and fair dealing requires that before you make war on me you should put me in the same condition in which you found me." The vital fact, which ought to have been found in order to sustain the theory of the appellant, is that the respondent received the possession from the appellant under and by virtue of the lease. If he did, he cannot, as we have seen, rely upon a title afterwards acquired by him to defeat a recovery in whole or in part. Yet this most important fact is not found either way.

The only finding bearing upon this point is as follows :

" That on the 23d day of January, 1861, the plaintiff as landlord, and the defendant as his tenant, entered into and executed a certain written lease of the premises described in the complaint, for the term of ten months from the 1st day of January, 1861, and for the rent for said term of fifty dollars cash, and for other considerations expressed in said lease."

Nothing is said as to which party was in possession at the time the lease was made—whether the defendant was in possession or entered afterwards under the lease—nor any facts found to show that the defendant may not be within some of the other exceptions to the rule in hand instead of the rule itself. Upon such a finding the appellant cannot obtain a reversal without showing that the rule upon which he relies is universal, or without exceptions of any kind, which, as we have seen, is not the case.

It may well be doubted whether the Act of the 20th of May, 1861, (so far as it relates to findings, and reproduced in the amendments of 1866 to section one hundred and eighty of the Practice Act,) is not productive of more mischief than good. It certainly proceeds upon an illogical theory,

for it inverts the natural and logical order of the proceedings. Instead of making it the duty of the successful party to see that the findings contain facts sufficient to sustain the judgment, it makes it the duty of the unsuccessful party to see that it contains facts sufficient to reverse it. Instead of making the finding a consistent and visible foundation for the judgment to stand upon, the statute converts it into air or a mine for its explosion. This change certainly detracts from the logic of the judgment roll, the various parts of which, like the members of a Macedonian phalanx, should rest upon and support each other, and entails a practice which, in a majority of cases, defeats the end which findings were intended to subserve.

The practice, which prevails to a very considerable extent, if not universally, of allowing the successful party to draw the findings after the judgment of the Court has been announced, does not favor the ends which a finding is designed to accomplish. To be of any use, under the operation of section one hundred and eighty, as amended in 1866, the finding should contain all the facts disclosed by the evidence which, in the judgment of counsel on both sides, have any bearing upon the question as to what the judgment should be. Unless it does, it is no better than a general verdict, and wholly fails to accomplish the object intended, which is to obviate the necessity of a motion for a new trial and a preparation of a statement of the evidence preliminary to an appeal. In a vast majority of cases there would be no occasion for a motion for a new trial, and as incidental thereto, for the trouble, labor and expense of getting. up a record upon which the motion is to be heard, if the findings were what they are designed to be, and what they ought to be; for in nine cases out of ten, where the trial is by the Court, the sole controversy here is as to whether the conclusions of law are correct. In all such cases there should be, and there certainly need be, no occasion for a motion for a new trial, or for bringing the evidence to this Court in any form. Every such case ought to come here upon the judg-

ment roll.   But under the present practice, in getting up the findings serious obstacles are thrown in the way, and the end of a finding often defeated, and therefore a motion for a new trial attended by delay, labor and expense made necessary.   Instead of announcing its judgment, and then, if findings are demanded by the unsuccessful party, directing the successful party to draw them, it would be a better practice for the Court to first ask counsel upon both sides if they desire findings; and if they do, reserve its judgment and direct each side to prepare and submit such questions of fact as they desire to have found.   This being done, the Court should answer from the evidence every question submitted, and then, having first determined and settled all the facts, pronounce its judgment, and not before.   By such a course a defective finding will rarely happen or a motion for a new trial be required.   If exceptions have been taken to the rulings of the Court, upon demurrers to evidence, they can be embodied in bills of exceptions and brought up for review in that form.   If, however, the practice of first announcing the judgment, and preparing the findings afterwards, is followed, the Court ought to direct the losing party to draw the findings; for the successful party, under the operation of the Act in question, has no motive to make the findings, in the first instance at least, what they ought to be.   Under the former practice the successful party was primarily interested in having the findings full and complete for the purpose of sustaining the judgment, and it was therefore proper that he should be allowed to draw them; but under the present practice the conditions are inverted, and the losing party has become primarily interested in the fullness and completeness of the findings, and, by parity of reason, he should be allowed to draw them.   The course first suggested, however, is in all respects the better practice.

Judgment affirmed.

SAWYER, J., dissenting :

As I understand the law, the exception upon which the discussion in the opinion arises, is too broadly stated by my associates. I do not understand that a party who takes a lease, while in possession, can under all circumstances dispute the title of his lessor. I do not find the exception so broadly stated anywhere in the books—either by the elementary writers, or in the reports. I have not been able to find a case that goes so far, while I find a number to the contrary. In *McConnell* v. *Bowdry's Heirs*, 4 Mon. 400, the Court say : " But with respect to Lettice Bowdry there are other facts proved in the cause which, in our opinion, excludes her from controverting the right of McConnell (one of the lessors of the appellant) to recover in the present case. She appears, on two successive years, to have leased the land of McConnell, and as the possession has never been since restored by her, according to well settled principles, she is estopped to contest his title. That a tenant is not in general allowed to dispute the title of his landlord was not denied in argument, but it was said, that it appears from the lease accepted by her from McConnell that she was, at the time both leases were made, residing upon the land ; and it was argued that unless the possession is received from the landlord, the tenant is at liberty to controvert his title ; and hence it was inferred that Mrs. Bowdry is not concluded from questioning McConnell's title by her acceptance of either lease. But, as respects her right to dispute the title of McConnell, we apprehend that it is totally immaterial whether or not Mrs. Bowdry was, in point of fact, residing upon the land at the date of the lease. By accepting the lease, and stipulating for rent, she as effectually recognized the title and possession of McConnell to the land upon which she resided, as she could possibly have done if at the time she had not lived upon the land, and had, after the lease was made, entered under McConnell. After accepting the lease she was the

32

tenant of McConnell, holding the possession under and for him, and in a proceeding like the present cannot, until she restores the possession to him, be permitted to deny that, at the making of the lease, he had title. With respect to Thomas, who was also a joint lessee with Mrs. Bówdry in the first lease, the same principle applies, unless the possession which he held under the lease has been restored to McConnell; but if he has yielded that possession to McConnell, and has not afterward in any way held under Mrs. Bowdry, he should not, by either lease, be prevented from controverting McConnell's title." This is directly in point. So in *Hall* v. *Butler*, 10 Ad. & El. 205, an action of replevin for property distrained for rent, Hall entered under a written demise under seal from one Nevitt, upon a yearly tenancy, and paid rent to Nevitt. Before the next rent day, Butler, defendant in the replevin suit, claimed the land, whereupon Hall and Nevitt went together to said defendant, Butler, who was thereupon informed by Nevitt, that he had given up the premises to defendant, and that defendant was now to be his landlord, and the rent was thenceforth to be paid to him. Hall accordingly paid to said defendant six shillings and six-pence on account of rent. Before any further payment had been made, another party, one Daniel Butler, claimed the premises and the rent, and thereupon Hall refused to pay rent to either till the question between the claimants should be settled, and the defendant in the replevin suit distrained upon him. The question was whether, having attorned to defendant Butler, while in possession, he could afterward dispute his title, and it was held that he could not. Lord Denman, C. J., said: " This is either a ratification of a demise by Butler, or is a fresh demise by him. In either case the same consequence follows, viz: that the title of the defendant, Butler, cannot be disputed by the tenant. As no deception or misrepresentation was intended by Nevitt or by defendant, Butler, the case falls within the ordinary rule." And Mr. Justice Louderdale says: " The legal effect of the arrangement is that the plaintiff may be considered as having

become tenant to defendant Butler under a fresh taking from Christmas, and the avowry is therefore proved " (206). This appears to me to be in point. In *Ingraham* v. *Baldwin* defendant entered as tenant under one Gilbert, and afterwards, while in possession, attorned to plaintiffs, Gilbert's grantees, and agreed to pay a certain rent for the land. He subsequently refused to pay, on the ground that he had as good a title to the premises as the plaintiffs. The Court say : " In the second place, a recognition by the defendant, being in possession, of the title of the plaintiffs, or of their grantor, in the manner above mentioned, would estop the former from insisting that his lessor or vendor had no title to the premises, unless he could show that the acknowledgment was produced by imposition, or made under misapprehension of his rights " (9 N. Y. 47). This puts the estoppel as well on the ground of his acknowledging the title of the plaintiffs by attorning to them, as on the ground of his taking a lease from their grantor. In *Panton* v. *Jones*, 3 Camp. 372, it is not shown that the plaintiff had title, or that defendant entered under her. It only appeared that on a prior occasion the defendant being in possession, the plaintiff distrained for rent, and defendant submitted to a distress, and on this ground alone she was held to be estopped from denying plaintiff's title. Mr. Justice Bailey said : " I have no doubt the submitting to a distress acknowledges a tenancy. The landlord, after distraining, cannot bring ejectment, and the occupant, if he does not replevy, I think is precluded from denying the title of the landlord." This was but an admission of the landlord's right by implication by a party in possession. In *Gleim* v. *Rise*, 6 Watts, 45, cited in the leading opinion, the rule is stated thus : " The law is well settled that when a person is in possession of property and leases it to another, and puts him in possession, the tenant cannot object to the title of his lessor, who can recover for rent, or for use and occupation if no rent was agreed upon. Also, if an owner of property find another in possession who agrees to hold under him." Now the term *owner*,

as here used, is a general term.  The learned Judge could
not have intended to say the party having a perfect legal
title, because if he was obliged to establish that, for the pur-
pose of availing himself of the estoppel, he could recover
without the aid of the estoppel, and there would be no neces-
sity for relying upon it.  He evidently meant to be under-
stood as saying, that a party claiming to own land finding
another in possession who agrees to hold under him.  So in
the case of an agreement to purchase, in which the estoppel
stands upon precisely the same principles as between land-
lord and tenant, a party, although in possession at the time
of making the agreement, in an action to recover the land, is
estopped from denying the title of his vendor.  So held in
*Jackson* v. *Ayres*, 14 Johns. 225.  The Court say : " This
agreement to purchase was an acknowledgment of the title
of Brown, and would estop the defendant from setting up an
outstanding title.  The defendant being in possession, when
the agreement was entered into, could make no difference.
He was in as a mere naked possessor, and must be considered
in the same light as if he had entered under the agreement."
The same was held in *Jackson* v. *Smith*, 7 Cow. 719–20,
unless the agreement could be shown to be a cover for usury,
and therefore void.  The exception referred to, so far as my
examination goes, is limited to cases where the party in pos-
session has been induced to take a lease by force, fraud,
misrepresentation or mistake.  I have not found a case
where the defendant who has taken a lease, or acknowledged
the title of his landlord, by paying rent, or otherwise, while
in possession, has been allowed to dispute the title of the
landlord, which has not embraced some one or more of these
elements, and stress has been laid upon the fact by the Court
in deciding the several cases.  Thus in *Hamilton* v. *Marsdon*,
6 Binney, 45, one Magee was in possession under one Brown,
and plaintiff, Hamilton, came with two men armed with
guns and threatened to drive Magee off unless he would
take a lease from him, and, in consequence, he did take a
lease.  The party claiming under Magee was permitted to

dispute Hamilton's title. Mr. Chief Justice Tilghman says : " If the plaintiff were permitted to avail himself of it in the present instance, it would be suffering him to defeat Brown's title merely by his own outrageous conduct. This case, therefore, forms an exception to the general rule, which is founded on the presumption of the lease being taken without fraud, force or illegal behavior on the part of the lessor." (47.) So also in *Brown* v. *Dysinger*, 1 Rawle, 409. One, Brown, being then dangerously ill with consumption, of which he soon after died, and in the possession of the premises, in that condition took a lease from one Walker, under threats of being turned out if he did not. The Court holds that the landlord's title was properly attacked, on the ground that " a tenant may impeach his landlord's title, if induced to take a lease by misrepresentation and fraud," and the like. (415.) So in *Miller* v. *McBrier*, 14 S. & R. 385, where the Court below, on the ground that a tenant cannot dispute the title of his landlord, refused to allow the defendant to introduce evidence to show that an instrument claimed to be a lease was executed by a party in possession upon fraudulent representations, the Court on appeal say : " A tenant may impeach his landlord's title whenever he can show that he was induced to accept of a lease by misrepresentation and fraud ; and the exhibition of a title founded in forgery to induce a person already in possession to accept a lease, is an act whose character is too unequivocal to be doubted. The evidence, therefore, was admissible to show that the agreement was procured by imposition and deceit." (385.) (See also *Swift* v. *Dean*, 11 Vt. 325 ; *Schultz* v. *Elliott*, 11 Humph. 186.) The English cases, also, so far as they have fallen under my observation, all involve the element of fraud, misrepresentation or mistake as to the title of the lessor at the time of taking the lease, or attorning. And this element is particularly stated in the opinion of the Judges. Thus in *Gravenor* v. *Woodhouse*, 1 Bing. 42, Mr. Justice Park says : " When it (rent) has been paid under a misrepresentation, the tenant is not estopped from resisting further payment

after discovery of the mistake." So in *Gregory* v. *Doige*, 3 Bing. 475 : " The Court was clearly of opinion that the plaintiff, having come into possession under a former owner, and having entered into this agreement in ignorance of the defect in defendant's title, might now show that defendant was not his landlord." Mr. Justice Butler, in *Williams* v. *Bartholomew*, is thus quoted by the Court: " If the tenant could have proved that his attornment proceeded on the misrepresentation of him who claimed as remainder man, he might have proved that another was still alive and entitled." (475.) *Doe* v. *Brown*, 7 Ad. & El. 449, turned upon misrepresentation and fraud, and *Rogers* v. *Pitcher*, 6 Taunt. 207–8, upon misapprehension and mistake of facts. And in *Cornish* v. *Searell*, 8 B. & C. 471, the only authority cited to the point in the opinion of my associates, was a case of mistake, and in that very case the exception is properly stated and limited. Mr. Justice Bayly says : " It has been said that the defendant, having agreed to become tenant to the plaintiffs, can dispute their title. If the defendant had received possession from them, he could not have disputed their title. In *Rogers* v. *Pitcher*, and *Gravenor* v. *Woodhouse*, the distinction is pointed out between the case where a person has actually received possession from one who has no title and the case where he has merely attorned by mistake to one who has no title. In the former case the tenant cannot (except under very special circumstances) dispute the title ; in the latter he may." (475.) Washburn states the rule thus : " The tenant cannot set up a title adverse to the lessor's, either in himself or a third party, inconsistent with the lessor's right to grant the original lease, even though * * * the lessee was in possession when he accepted the lease." (1 Wash. Real Prop., 358–9, par. 4.) The exceptions are stated in the paragraphs immediately following.

Upon these authorities I am satisfied that a party in possession, who takes a lease, is estopped from disputing the lessor's title, unless he has been induced to take the lease by force, fraud, misrepresentation or some mistake induced by

the lessor, and that the exception is too broadly stated in the opinion of my associates.

In my judgment, the provisions of section one hundred eighty of the Practice Act, as amended in 1866, are salutary. So far as my observation extends, the points upon which judgments were formerly reversed on the ground of insufficiency of or defects in findings, were such as were not litigated in the Court below, or were merely formal, and in preparing the findings, the attention of the Court or counsel was not drawn to them, and consequently they were overlooked and omitted. The defect was not discovered till too late to remedy it, when it was brought to the attention of the party succeeding, for the first time, as a point for the reversal of the judgment on appeal.

It will be seen by reference to section one hundred eighty, as amended, that a party is not entitled to a written finding as a matter of right unless, "at the time of the submission of the cause," he shall have "requested a finding, in writing, and had such request entered in the minutes of the Court." I concur in the suggestion that when such request is made, it would be the better practice to require the counsel on each side to present the points arising under the issues and evidence, upon which they desire findings, before the finding is drawn up, and then to make a finding on all such points. This would, doubtless, be advantageous and save much trouble in passing on exceptions for defects. When findings are drawn by counsel, I think, also, that the Court, before signing and filing, should always submit them to the opposite counsel for their suggestions.