EDWARD FRANKLIN v. EPHRAIM MERIDA, FREDERICK WITTRAM, CHARLES A. MERRILL, AND WASHINGTON ELLIOT.

DOCTRINE OF ESTOPPEL. — The doctrine of estoppel, which may be said to be founded upon the adage that "the truth is not to be spoken at all times," is a harsh one, and is never to be applied except where to allow the truth to be told would consummate a wrong to the one party or enable the other to secure an unfair advantage.

IDEM — AS APPLIED WHERE THE RELATION OF LANDLORD AND TENANT EXISTS. — If A., being in possession of land, deliver the possession to B. upon his request and upon his promise to return it, with or without rent, at a specified time or at the will of A., B. cannot be allowed, while still retaining the possession, to dispute A.'s title; but it is otherwise if B. is in possession and takes a lease from A., since the latter parts with nothing, and the former has obtained nothing by the transaction.

IDEM—WHEN TENANT NOT ESTOPPED.—The bare possession by the tenant of the demised land at the time the lease is given is sufficient to take the case out of the operation of the general rule, that the tenant cannot, before surrendering possession, dispute the landlord's title. (Tewksbury v. Magraff, 33 Cal. 237, affirmed.)

IDEM.—As between landlord and tenant the estoppel is designed as a shield for the protection of the former, but not as a sword for the destruction of the latter.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This was an action of ejectment, commenced March 10th, 1865, to recover a tract of land in the City and County of San Francisco. The plaintiff counted upon title in fee in him, and an ouster by the defendants, which was alleged to have been made November 21st, 1864. The answer put in issue all the averments of the complaint, except the possession of the defendants, which was justified, and in addition pleaded the Statute of Limitations in bar.

The trial was before the Court with a jury, at which the plaintiff deraigned title to the demanded premises from Jesse E. George and Silas M. Calla, who conveyed the same to Edwin L. B. Brooks and James Devoe by deed, dated December 13th, 1854, and to the title of the latter the plaintiff succeeded, through a series of mesne conveyances, which title vested in him December 18th, 1862. The evidence for the plaintiff tended to prove the further facts following, to wit: that plaintiff's title to said premises was founded on a purely possessory claim thereto, made by said George prior to the year 1853; that prior to said conveyance of December 13th, 1854, defendant Merida was in possession of said premises as the agent of said George, and that said Merida had been thereafter continuously in possession of the same until the commencement of this suit; that on the 5th day of February, 1855, defendant Merida, at the request of said Brooks—who by way of inducement thereto represented to Merida that he (Brooks) and Moses Whitcomb had succeeded by deed to all the rights of said George in said property, and were the owners of the same—joined with Brooks and Whitcomb in the execution of a writing, a copy of which is as follows:

"SAN FRANCISCO, February 5th, 1855.

"This is to certify that Edwin L. B. Brooks and Moses Whitcomb have let and rented unto Ephraim Merida, a certain tract of land, situate in the County of San Francisco, adjoining the 'Lone Mountain Cemetery,' consisting of about seventy-five acres, more or less, being the same land now and heretofore occupied by the said Ephraim Merida, for the

term of six months from the date hereof, at the rent of one dollar; and the said Ephraim Merida agrees to occupy the same, and to cultivate some portion of the same during the term of said lease, and also to allow the parties first above mentioned at any time during the said lease to *use, occupy*, or *sell* any portion of said land not in actual use and improvement by the said

" E. L. B. BROOKS,

" MOSES WHITCOMB,

his

" EPHRAIM ⋈ MERIDA.

mark.

" Witness : R. BEECHING."

The foregoing instrument, on account of certain defects in proof of its due execution, was not admitted in evidence, but was permitted to be read to the jury in connection with the instrument hereinafter contained, dated June 15th, 1859, as containing a description of the premises therein referred to.

That at the time of the execution of the foregoing writing said Brooks and Whitcomb had succeeded by deed to whatever title passed by said conveyance of December 13th, 1854.

That on the 15th day of June, 1859, the following instrument, which was written on the back of the foregoing writing, was executed by defendant Merida, upon the request of Lumley Franklin and Moses Whitcomb, who at the time of its execution were the successors to the title which passed by said conveyance of December 13th, 1854, to wit :

" I, Ephraim Merida, hereby agree to pay to Lumley Franklin and Moses Whitcomb one dollar per month rent for the lands I occupy for them as above described, until such period as they may require the same.

" San Francisco, June 15th, 1859.

his

" EPHRAIM ⋈ MERIDA.

mark.

" EDWARD FRANKLIN, Witness."

That defendant Merida never paid rent to any one. There was also testimony on behalf of defendants tending to prove

that said George had, in 1853 and prior thereto, claimed and resided upon said premises, defendant Merida at the time residing thereon with him, but that sometime during said year he had abandoned his possession and possessory claim thereto in favor of defendant Merida, leaving the latter in possession thereof; that the defendants, other than Merida, claimed under conveyances to them from defendant Merida.

The defendants' counsel requested the Court to give the following instructions to the jury:

1. " If the jury shall be satisfied from the evidence that the defendant Merida executed the lease, being dated June 15th, 1859, and that he was induced to sign such lease by the misrepresentations of the lessors, or the lessors' agents, in this, that they were the owners of the land, when in fact they were not such owners, and that the said Merida was then in possession of the land referred to in the complaint, then the lease of June 15th, 1859, is not binding on the defendant Merida, or his grantees.

2. " If the jury believe from the evidence that the defendant Merida was in actual possession of the property described in the complaint at the time it is alleged he signed the lease of June 15th, 1859, and that his signing the same was induced by and founded upon the exhibition of the void lease, bearing date February 5th, 1855, such fact does, in law, amount to imposition and deceit, and such lease so signed does not estop the defendants from inquiring into the title of the plaintiff, or of the title of his grantors.

3. " The Court charges you as matters of law, that if the defendant Merida did not obtain possession from the lessors of the lease of June 15th, 1859, but was already in possession, and that if he entered into said lease in ignorance of any defect in the title of the lessors, then he or his grantees may show that the persons described in said lease as lessors were not his landlords.

4. " If the jury are satisfied from the evidence that the

71

defendant Merida did not enter into possession of the premises in controversy under the alleged lease of June 15th, 1859, and that he accepted said alleged lease under a mistake of facts, or in prejudice of his own rights, then. neither he nor his grantees are bound by said alleged lease.

5. " If the jury shall find that the defendant Merida made declarations of his tenancy to Whitcomb and others, and that such declarations were made in ignorance of his own rights, or in ignorance of the title of the grantors of the plaintiff, or under a mistake of facts, or by misrepresentations of the plaintiff or his grantors, then such declarations may be disregarded by the jury.

6. " If the jury are satisfied from the evidence that George actually abandoned the property in controversy, then his right to the same was as much divested on the day such abandonment took place, as though he had made an actual conveyance of the property, and no subsequent conveyance made by him was of any force or effect.

7. " If the jury are satisfied from the evidence that George actually abandoned the property in controversy, and that the defendant Merida entered upon and took possession of the property so abandoned, he acquired a new right of possession, independent of all other claims of title, and his right to the possession is superior to the claim of the plaintiff as derived from George.

8. " If the jury are satisfied from the evidence that Merida was in sole and actual possession of the land in controversy five years next preceding the 15th day of June, 1859, he had then acquired a title to the premises in question, and if he accepted a lease from the plaintiff's grantors in ignorance of his title so acquired and to the prejudice of his rights, then such lease was not binding upon him or upon his grantees.

9. " If the jury are satisfied from the evidence that Merida occupied the property in controversy more than five years next preceding the commencement of this action, to wit: March 10th, 1865, and if they find that Merida never executed or accepted the alleged lease from Franklin and Whit-

comb, bearing date June 15th, 1859, then they will find for the defendants.

10. " If the jury are satisfied from the evidence that Merida occupied and had actual possession of the property in controversy for more than five years next preceding the commencement of this action, and if they also find that Merida signed and accepted the lease of Franklin and Whitcomb under a mistake of fact, either in regard to his own title or in regard to the title of the lessors mentioned in said lease, then they will find for the defendants."

All of which instructions the Court refused to give, and the defendants' counsel then and there excepted.

The plaintiff's counsel then moved the Court to give certain charges or instructions to the jury, which are as follows:

1. " Yet, if you believe from the facts, that Jesse George did abandon the premises in dispute, or give them to the defendant Merida, nevertheless, if the defendant Merida voluntarily signed and delivered, understanding what he was doing, a lease of the land to plaintiff's grantors, Lumley Franklin and Moses Whitcomb, then you will find for the plaintiff.

2. " If you believe from the facts that the defendant Merida voluntarily signed and delivered to Lumley Franklin and Moses Whitcomb the lease read in evidence, knowing its contents, then the plaintiff is entitled to recover."

Which instructions were given by the Court to the jury, as asked by the plaintiff, and the defendants' counsel then and there excepted.

And thereupon the Court further charged the jury, among other things, as follows:

" But if the proofs satisfy you · that in whatever capacity said Merida was in possession of said premises, he knowingly, and without fraud, misrepresentations, or deceit, by the plaintiff, or his grantors, or either of them, consented,

whether by lease or otherwise, to occupy and hold such premises for the plaintiff, or his grantors; and you should further find from the proofs that the defendants, other than the said Merida, claim solely through said Merida, then, in such case, you will find for the plaintiff. The fact, if you should find it to be so, that Brooks told the defendant Merida on or about February the 5th, 1855, that he and the parties whom he represented had succeeded by deed to the right of George, would not, in and of itself, constitute a deceit, or misrepresentation, or fraud, within the meaning of this charge, provided you should find from the proofs that such assertion was true. The rights of George, whatever they were, it is conceded by the parties litigant, were simply possessory; and, if the proofs satisfy you that the defendant Merida knew the fact that George had abandoned the premises or had given his rights thereto to him, (Merida,) the assertion by Brooks, that George had conveyed his rights by a deed of a date subsequent to abandonment, or subsequent to the vesting of such rights in Merida by gift, could not, in contemplation of law, have prejudiced Merida; and, as he was at liberty either to assert his own rights or recognize those claimed by Brooks and Whitcomb, if you should find that he chose to do the latter, he must be presumed to have waived his own in their favor."

And the defendants' counsel then and there specifically excepted to each and every one of such instructions given by the Court to the jury.

Whereupon, the cause was submitted to the jury, who found a verdict in favor of the plaintiff and against the defendants, and judgment passed for plaintiff accordingly. The defendants appealed from the judgment and from an order denying their motion for a new trial.

*Thompson Campbell*, and *Charles Wittram*, for Appellants.

The material questions relied upon by appellants will be found in the instructions asked by the defendants and refused

by the Court, and in the charge of the Judge to the jury, all of which were duly excepted to at the trial.

The defendants had the right to dispute the plaintiff's title to the premises in controversy, on the ground that their grantor did not obtain the possession of the premises from the plaintiff or his grantors, by virtue of a lease, or in any other manner, but was in possession when the pretended lease was taken. (*Chettle* v. *Pound*, 1 Ld. Raym. 746; *Cornish* v. *Searell*, 8 Barn. & Cress. 236; *Rogers* v. *Pitcher*, 6 Taunt. 203; *Gregory* v. *Doedge et al.*, 3 Bing. 475; *Gleem* v. *Rise*, 6 Watts, 45; *Tewksbury* v. *Magraff*, 33 Cal. 237; *Jackson* v. *Spear*, 7 Wend. 404.)

The policy of the law that estops a tenant from denying his landlord's title in an action brought to recover the possession of the premises, is based on the principle that one who has been put into possession of leased premises, and has been permitted thereby to occupy them, shall not, until he has surrendered up the possession, be permitted to question the lessor's title, unless the lease was obtained by fraud, misrepresentation, deceit, or imposition. (Washburn on Real Property, 356, 357, 360.)

*C. H. Parker*, for Respondent.

The case of *Tewksbury* v. *Magraff* is the strongest one cited by appellants' counsel. It is without precedent. No case can be found in the books which has ever gone to such extreme lengths. It would seem to be a violation of sound morals; it encourages fraud and perjury, as is exemplified in the present case. Merida knew the nature of his possession —knew whether he claimed the land or not, or whether he intended to claim it, at the time Brooks asked him to sign the lease. It was the duty of Merida to assert such rights as he had and knew of at that time. He did not do so, but became a tenant. If he had refused, an action would have been brought against him when the facts were fresh, and the truth could have been easily established. He suppresses

the knowledge of his own rights, (if he had any,) and leads the plaintiff to believe that he (Merida) has no claim during a period of twelve years, and then makes known his title for the first time. The result has been, that the suppression of the facts within his own knowledge, and the assumption of the relation of landlord and tenant has misled the plaintiff and his grantors, and given to Merida the advantage of keeping a possession which has enabled him and his grantors the better to contest the very title which he has recognized for a period of fourteen years. It is not possible that an exception to the general rule, that a tenant cannot dispute the title of his landlord, can be so extended as to indorse and shield transactions of this impression.

I shall not attempt to add anything to the reasoning of Mr. Chief Justice Sawyer in his dissenting opinion in the case of *Tewksbury* v. *Magraff*. The views there expressed seem to me to be sound. The rule, as it is therein claimed to exist, ought to be the rule everywhere. It is sustained by authority directly in point, in *McConnell* v. *Bowdry's Heirs and Widow*, 4 Monroe, 400; *Hartzog* v. *Hubbard*, 2 Des. & Batt., N. C., 244.


By the Court, SANDERSON, J.:

In *Tewksbury* v. *Magraff*, 33 Cal. 237, we had occasion to consider the principal question involved in this case. In that case, among the exceptions to the general rule that a tenant cannot dispute his landlord's title, we classed the case where the tenant did not enter into possession under the landlord's title, but was in possession at the time he took the lease; and in support of that proposition we argued in effect that the law does not favor estoppels, for their effect is to prevent the party against whom they are invoked from proving the truth of the matter, to ascertain which, as a general proposition, is the great end of judicial inquiry. The doctrine of estoppel may be said to be founded upon the adage that "the truth is not to be spoken at all times," which is not

less a rule of law than of ethics. The doctrine is a harsh one, and is never to be applied except where to allow the truth to be told would consummate a wrong to the one party, or enable the other to secure an unfair advantage. If A., being in possession of land, deliver the possession to B. upon his request and upon his promise to return it, with or without rent, at a specified time, or at the will of A., B. cannot be allowed, while still retaining possession, to dispute A.'s title, because to allow him to do so would be to allow him to work a wrong against A. by depriving him of the advantage which his possession afforded him, and with which he would not have parted but for the promise of B. that he would hold it for him, and in his place and stead. But the maxim, *cessante ratione legis cessat ipsa lex*, must not be overlooked. " Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." If B. is in possession, and takes a lease from A., the latter parts with nothing and the former has obtained nothing by the transaction. If, however, either has gained anything, it is A. He has gained rent, and in the event of a controversy, a *prima facie* case, as against B., without proof of title, while B.'s case is weakened by so much as a *prima facie* case is worth. A. may have gained more, for he may have severed an adverse possession and stayed the running of the Statute of Limitations, for there can be no adverse possession while the lease subsists, or until there has been an open repudiation and disavowal of the tenancy by B. A.'s right to sue for possession is postponed, it is true. In that respect only is his relation to the property affected by the transaction, except beneficially; but for the possession, which he might have obtained, the rent promised by B. is a legal equivalent. Having thus obtained no advantage over A. by the transaction, why should B. be estopped from showing precisely what he would have been permitted to show had the transaction never occurred? If A. is thus in no worse plight than he was before the transaction, upon what principle in law or ethics can the truth be kept back? Upon what rational ground, either in an action

upon the lease for rent, or in an action for the possession, should B. be denied the right to show that A. had no title, and, therefore, no right to the rent or possession? If B. has promised to pay rent, or hold the possession for A., he having no title, where is the consideration for B.'s promise? Suppose the title is in C.; B. is then legally bound to pay the value of the use and occupation to C., and surrender to C., notwithstanding the lease from A. If, then, he cannot be allowed to dispute A.'s title, B. can be legally made to pay rent to A., and the value of the use and occupation to C. The doctrine of estoppel between landlord and tenant was never designed to work such a result. It was designed merely as a shield for the protection of the landlord, and not as a sword for the destruction of the tenant.

It may be said that the taking of the lease by B. is a misrepresentation of his own relation to the land, and calculated to lull A. into security, and induce him to neglect the prosecution of his rights, to his prejudice in some possible way. If so, by parity of reason, the giving a lease is a misrepresentation by A. as to the title, tending directly to the prejudice of B., and if the account of the latter is to be charged with misrepresentation in receiving, the account of the former must, by parity of reason, be charged with misrepresentation in giving the lease, which so far results in a balance, and still leaves the parties upon equal terms, to maintain which is the principal object of the estoppel.

And this brings us to the precise point of difference between us and the learned counsel for the respondent, whether the bare possession of the tenant at the time the lease is given and taken is sufficient to take the case out of the operation of the general rule, that the tenant cannot dispute the landlord's title, or whether there must be, in addition to the possession of the tenant, some force, fraud, misrepresentation, or mistake induced by the landlord, beyond what is implied in the transaction itself, by which the tenant was influenced to take the lease. The latter view

is maintained by counsel, while in *Tewksbury* v. *Magraff* we declared the former.

Counsel does not claim that force, fraud, misrepresentation, etc., are not of themselves, irrespective of the fact of possession, sufficient to take the case out of the operation of the general rule. If they are, and of that there can be no doubt, it follows that, on the score of principle, the fact of possession is a false quantity for all the purposes of the ques-tion. If the bare possession of the tenant is not enough, and force, fraud, misrepresentation, and the like, are of them-selves enough to take the case out of the operation of the general rule, obviously the fact of possession is then wholly immaterial, and constitutes no quantity in the problem to be solved. So, on the score of logic, the argument, if it proves anything, proves too much.

But it is said that *Tewksbury* v. *Magraff* goes further than any previous case has gone, and that it cannot be maintained upon authority. That there are cases where it has been held that the bare possession of the tenant at the letting does not relieve him from the estoppel, cannot be denied; nor can it be denied, as we shall presently see, that there are cases the other way. The latter, in our judgment, accord with the reason upon which, as we have seen, the estoppel is founded, but the former do not.

Of the cases which declare a doctrine contrary to the one entertained by us, there are two classes : first, those in which the facts presented the dry question whether the bare pos-session of the tenant at the letting relieves him from the estoppel; and second, those in which the dry question was not presented by the facts, and the docrine was announced merely in the course of discussion. The latter are entitled to no consideration as precedents. For the former only can that distinction be claimed. Of them only two have been called to our attention in which the decision turned upon a bare possession by the tenant at the time of the letting: *McConnell* v. *Bowdry's Heirs and Widow*, 4 Monroe, 392, and

72

*Jackson* v. *Ayres*, 14 Johns. 224. In neither case was the reason upon which the estoppel is founded considered or applied. In each the Court merely stated what it considered to be the rule; and the latter case, as the report shows, was submitted without argument. Such cases are far from satisfactory, and are not to be received as conclusive of the law. The remaining cases, upon which the respondent relies, are entirely consistent with the rule announced by us in *Tewksbury* v. *Magraff*.

In *Hall* v. *Butler*, 10 Ad. & Ellis, 205, N., having no title to certain premises, let them by parol, and received rent. Afterwards another claimant, B., demanded the rent; and N. being satisfied with B.'s title, informed his tenant, in B.'s presence, that he had given up the premises to B., who was now the landlord, and that the rent was thenceforth to be paid to B. The tenant acquiesced, and when B. demanded the next quarter's rent, paid part of it on account. Lord Chief Justice Denman, Mr. Justice Littledale, and Mr. Justice Patterson, all delivered opinions to the effect that the tenant was estopped, but put their conclusions upon somewhat different grounds. Lord Denman put his judgment upon two grounds: first—that N. was to be considered as the agent of B., and, therefore, that the entry of the tenant was under B.'s title; and second—that there was a fresh demise by B., unaccompanied by any misrepresentation as to the title by B. In this latter ground Lord Denman implied merely that the possession of the tenant, of itself, made no difference in the result. Mr. Justice Patterson, however, recognized the contrary doctrine. He said: " There is a distinction between disputing the title of one who has actually let the party into possession, and of one who afterward claims to be entitled. In the latter case the tenant may generally dispute it by showing title in another." He then adds: " I am not sure that it [the transaction between N. and the tenant] may not be considered as an original taking from B. himself; for N. treats himself as the agent of B. who adopts the demise." This common ground must be

considered as the ground upon which the judgment in the case rests, in which view the case is entirely consistent with the rule in this Court.

*Ingraham* v. *Baldwin*, 9 N. Y. 45, was a case where the tenant entered under the lease, and the landlord afterward conveyed to the plaintiff, to whom the tenant then attorned; and it was held, that the tenant could not dispute the title of the plaintiff. Instead of being at war with *Tewksbury* v. *Magraff*, this case is entirely consistent with it. We there held, that in such a case the tenant could dispute only the derivative title. By so doing he does not deny the title of his landlord, but merely that the plaintiff has become the grantee of his landlord. But beyond that he cannot go, for to do so would be to dispute the title under which he entered.

The other cases are where extrinsic misrepresentation and the like, on the part of the landlord, accompanied the possession of the tenant at the letting, and where it was held that the tenant was not estopped. They are: *Hall* v. *Benner*, 1 Penn. 402; *Hamilton* v. *Marsden*, 6 Binney, 45; *Brown* v. *Dysinger*, 1 Rawle, 409; *Miller* v. *McBrier*, 14 S. & R. 385; *Swift* v. *Dean*, 11 Vt. 325; and *Shultz* v. *Elliott*, 11 Humph. 186. Of them it is sufficient to say that they are not authority upon the question in hand. They establish the proposition that a tenant who was in possession at the time he took his lease, and who was induced to take it by unfair means, may dispute his landlord's title—a proposition which no one disputes. Because they do that, however, they cannot be taken as negatively establishing the proposition that the tenant cannot dispute the title of his landlord solely upon the ground that he was in possession when he took his lease. They cannot be considered as implying such a proposition; but even if they did, so important a question is not to be so decided.

We now come to those cases by which, as we consider, the rule in *Tewksbury* v. *Magraff* is sustained. *Chettle* v. *Pound*, 1 Ld. Raym. 746, was an action of debt for rent. Upon *nil debet* pleaded, the plaintiff gave in evidence a note

in writing, by which the defendant had agreed to hold for one year, rendering rent of fifteen pounds sterling. The plaintiff was grantee of a reversion expectant upon an estate for life, and the tenant for life was dead at the time the note was given. The grant to the plaintiff was made forty years before, and he had never been in possession. The defendant offered to prove a grant of the reversion prior to that of the plaintiff, and thus show that the plaintiff had no title at the time the note in writing was given, and it was ruled by Mr. Chief Justice Holt, that the defendant could do so because the plaintiff had never been in possession; but if he had, that then the defendant could not have given the prior grant in evidence without having been evicted. There was no pretense that the note in writing, by which the defendant had agreed to hold for the plaintiff, had been obtained by any unfair means not implied in the transaction itself, and the case turned wholly upon the bare fact that the defendant did not receive the possession from the plaintiff.

*Rogers* v. *Pitcher*, 6 Taunt. 202, was replevin for property distrained for rent. The plaintiff was in possession, and the defendant obtained a judgment and *elegit* against a moiety of the premises, and thereafter the plaintiff had paid rent for such moiety. The defendant, on whom the issue of tenancy lay, proved the payment of rent, and rested. The plaintiff proposed to answer it by showing that the defendant was not, at the time the rent was paid, or then, legally entitled to the rent. To which the defendant objected upon the ground that by the payment of the rent the plaintiff had acknowledged the defendant as her landlord, and was now estopped from contesting his title. It was held that the plaintiff was not estopped. There was no pretense of any extrinsic misrepresentation, or the like, on the part of the defendant by which the plaintiff had been induced to pay rent. There was, therefore, no ground for the rule adopted, except the possession of the plaintiff before and at the time of the attornment; although there is, as we admit, language in the opinions of the Judges which, unless read by the light

of the facts of the case, might lead to the inference that the case included express misrepresentation or the like. But it is well understood that, on the score of authority, it is the facts and the judgment thereon which constitute the case, and not the mere language of the Court in announcing its conclusions.

*Gravenor* v. *Woodhouse,* 1 Bing. 38, was also an action of replevin for property distrained for rent. At the trial the defendant put in a written attornment, by which the plaintiff, being in possession at the time, as the attornment upon its face showed, agreed to hold for one year, and from year to year, at a yearly rent of seventy pounds sterling, without prejudice to any right or claim of his own to the premises.

It was objected on the part of the plaintiff that the language of the avowries was not sustained by the attornment, and evidence was offered of a feoffment made to the plaintiff by a person under whom the defendants claimed, and of certain letters from that person containing expressions which were said to be adverse to the defendants. The Court, however, thought the avowries sustained by the language of the attornment, and rejected the evidence, upon the ground that the plaintiff could not dispute his tenancy, after having made the attornment in question. There was no pretense, so far as the case shows, that the attornment had been obtained by any unfair means, not implied in the transaction, on the part of the defendants. The judgment went against the plaintiff, and there was, therefore, no ground for a new trial, except the fact that the plaintiff was in possession when he attorned. A new trial was, nevertheless, granted, the Court holding that the attornment did not estop the plaintiff.

*Cornish* v. *Searell,* 8 B. and C. 471, was assumpsit for use and occupation. A. being tenant in possession under B, and a sequestration having issued out of chancery against B., signed the following instrument: "I hereby attorn and become the tenant of C. and D., two of the sequestrators named in the writ of sequestration issued in the said suit in chancery, and to hold the same for such time and on such conditions

as may be subsequently agreed upon." It was held, first, that this was an agreement to become tenant and required a stamp; and, second, that A., not having received possession from C. and D., might dispute their title. So far as the statement of facts as given by the reporter, shows, there was in this case no suggestion of unfair means not intrinsic, on the part of C. and D., by reason of which A. was induced to attorn to them. Yet it has been said that it was a case of mistake. This statement has no foundation whatever in the facts of the case, and rests entirely upon a single word found in the opinion of Mr. Justice Bayley, who said: "As sequestrators they [the plaintiffs, C. and D.] have no legal right to receive the rents. It has been said that the defendant, having agreed to become tenant to the plaintiffs, cannot dispute their title. If the defendant had received possession from them, he could not dispute their title. In *Rogers* v. *Pitcher*, and *Gravenor* v. *Woodhouse*, the distinction is pointed out between the case where a person has actually received possession from one who has no title, and the case where he has merely attorned by *mistake* to one who has no title. In the former case the tenant cannot (except under very special circumstances) dispute the title; in the latter he may." The claim that the case was one of mistake is founded solely upon the use of the word "mistake" in the foregoing passage. There was no mistake whatever as to the title of C. and D. There could be none, for the instrument which was signed by A. showed upon its face that they were only sequestrators, and, therefore, without legal claim to the rents. It cannot be supposed that a person in possession will knowingly take a lease from a party who has no title to the premises, and it is not, therefore, a forced use of language to speak of it as a "mistake;" and it is in that sense that we understand Mr. Justice Bayley. But were it otherwise, the incautious use of words by the Court cannot override the facts of the case, or limit the force of the judgment. It is very certain that A. signed the instrument with his eyes open, knowing

all the facts and circumstances, and that it was considered that he was not estopped by that act.

In *Jackson* v. *Cuerden*, 2 Johns. Cases, 353, the defendant A. being in possession under B., the supposed proprietor, applied by letter to C., as the real owner, to purchase, and requested to be considered as a tenant. In ejectment by C. against A., it was held that the latter was not estopped by his letter from showing that his letter was grounded on a mistake, *or that the fee existed in himself, or out of the plaintiff.* (See, also, *Jackson* v. *Spear*, 7 Wend. 401.)

In all cases where a party out of possession seeks a taking and holding under himself by another in possession, from the very nature of the case there must be a representation by him that he is the owner. The bare proposition to lease involves such a representation, and if he be not the owner the representation is false. If, under such circumstances, a party in possession takes a lease, his act can be accounted for upon no rational theory except that he was influenced by this express or implied representation. When, therefore, in the opinions of the Judges, such expressions are used, their sense is fully satisfied, as we consider, by the intrinsic probability that there was unfair means employed, or there was some mistake, by which the tenant was induced to act; and, in our judgment, such intrinsic probability not only justifies, but requires the Courts to look behind the lease, and unearth the truth. As already suggested, the doctrine of estoppel was not designed to secure to any one an advantage over another, but to prevent such a result, and to maintain the status which existed at the outset—to protect the landlord in his actual possession against the trickery or sharp practice of the tenant, not to enable him to impose upon the tenant, and thereby obtain that which before he had not. To hold otherwise would be to blow hot and cold—to approve fraud and trickery in one, and reprove it in another, in the same breath. At best, the landlord gains the advantage of a *prima facie* case, and casts upon the tenant the burden of overcoming it, for he has but to prove the lease and rest. With

this he must be content; for, in our judgment, the cases which go further are departures from principle, and therefore precedents which ought not to be followed.

Judgment and order reversed, and a new trial granted.


SAWYER, C. J., dissenting:

I dissent. I adhere to the views expressed in my dissenting opinion in the case of *Tewksbury* v. *Magraff*, 33 Cal. 249. It is unnecessary to repeat them here.