[S. F. No. 8299. In Bank.—September 24, 1919.]

## RICHARD HAMBEY, Appellant, v. WM. F. WISE et al., Respondents.

[1] VENDOR AND VENDEE—ORAL CONTRACT FOR SALE OF LAND—STATUTE OF FRAUDS—PART PERFORMANCE—NATURE OF POSSESSION.—The possession of land by a vendee under an oral contract of sale, in order to constitute part performance and render the contract enforceable, must be such as would make him liable for trespass if he was not allowed to prove his oral contract.

[2] ID.—ELEMENTS OF POSSESSION.—The possession which must exist to constitute part performance must be an actual possession by the vendee, visible, notorious, and exclusive, and such as manifests definitely and clearly that the vendee is claiming and asserting a distinctive ownership of the property, which is inconsistent with the right of possession or ownership in any other person.

[3] ID.—POSSESSION BY TENANT OF VENDOR—EXECUTION OF LEASE BY VENDEE TO TENANT—INSUFFICIENT POSSESSION BY VENDEE.—An oral contract for the sale of land will not be specifically enforced where the vendee never took actual possession, but merely executed a lease thereof for a term certain to the occupant who was and had been for a long time in possession as a tenant of the vendor.

APPEAL from a judgment of the Superior Court of Monterey County. J. A. Bardin, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. F. Lacey for Appellant.

Alex Webster, Chas. B. Rosendale and Cullinan & Hickey for Respondents.

LENNON, J.—The facts upon which this appeal is based are stated as follows in the opinion prepared by Mr. Justice Beasly, sitting *pro tempore* as a member of the district court of appeal for the first appellate district:

"This action was brought to obtain a decree of specific performance of an oral contract for the conveyance of real property. The record consists of the judgment-roll alone. From the findings it appears that on March 12, 1916, plaintiff entered into an oral agreement with defendant Wise for the purchase of the property in question for the sum of one thousand dollars, and that said defendant authorized and directed the plaintiff to take possession of the property, which was distant about one hundred miles from the place where the agreement was made. Prior to, and at the time of the making of this agreement, the property was in the possession of one Webster Wood, who is also a defendant in the action. Wood occupied the land from the fall of 1913 to the fall of 1915 as a tenant of defendant Wise, the owner. Wise had refused to make a further lease of the premises to Wood, but entered into an oral agreement with him, by the terms of which it was stipulated that Wood might buy the land for the sum of one thousand four hundred dollars, and pay for it later out of the proceeds of the sale of a crop of grain that he then had on hand, and in the meantime he might retain possession of the land. Wood sold the grain, but did not avail himself of the option of purchase up to the time of plaintiff's agreement. He entered into the possession of the land, however, and began the cultivation thereof, and in the fall of 1915, or in the spring of 1916, but prior to March 12, 1916, when the agreement here involved was entered into, he seeded about fifty acres to barley, which was growing upon the lands at the time plaintiff and defendant Wise entered into their oral agreement of sale, and plaintiff was familiar with this fact. Five days after this oral agreement, and on March 17, 1916, the plaintiff told defendant Wood that he had purchased the real property, and that he had a deed thereto which was of record. The statement, in so far as it related

to the deed, was false. The same day plaintiff and defendant Wood entered into a written agreement by the terms of which defendant Wood leased from plaintiff the land in question, together with 820 acres of other land all in one body, from March 17, 1916, to November 1, 1916. Thereafter, on March 25, 1916, while negotiating with Wise relative to the purchase of said land, defendant Wood received notice of all the terms of the agreement between plaintiff and Wise. Upon learning that the agreement of sale was an oral one, and that it had not been concluded, Wood induced Wise to convey him the property for a consideration of one thousand four hundred dollars, the deed conveying the same being immediately recorded by Wood. Thereafter plaintiff tendered Wise the sum of one thousand dollars, his purchase price, and upon Wise's refusing to convey, this action was brought.''

It further appears, as found by the trial court, ''That the defendant, Wood, during the period from March 17, 1916, until the conveyance of said real property by defendant, Wise, to defendant, Wood, continued to remain in possession of said premises as follows: By continuing to exercise dominion over said premises and to have growing thereon the crop of grain referred to, but during said time did not make any physical entry upon or into said premises.''

''In its conclusion of law the trial court holds that the plaintiff never took actual possession of the premises agreed to be conveyed, and that there was no part performance of the agreement sufficient to take the agreement out of the statute of frauds or to enable plaintiff to specifically enforce the same. This conclusion is based upon the finding 'that the plaintiff did not go physically upon the said described real property, and did not take any possession thereof other than by the execution of said lease to the defendant Wood.' ''

Even if it be conceded that on March 17, 1916, Wood was a tenant at will holding under Wise, and that, by the written agreement entered into on that date between Wood and Hambey, Wood terminated the tenancy at will and became the tenant of Hambey for a term certain, nevertheless Wood was not precluded from acquiring title to the property from Wise, nor is he precluded from setting up in this action any title he may have so acquired, inasmuch as Hambey is not seeking to recover for the use and occupation of the land under the lease, but has put the title itself in issue. (*Jochen* v. *Tibbells,* 50 Mich. 33, [14 N. W. 690]; *McKie* v. *Anderson,*

78 Tex. 207, [14 S. W. 576].)   It follows that Hambey is entitled to compel a conveyance from Wood only in event the latter acquired title under circumstances rendering it unconscionable for him to keep· the land.   In other words, the single question presented upon this appeal is whether or not Wood purchased the land in good faith, it not being denied that he paid value.

It is well settled that the fact that a purchaser of land took it with notice of a prior contract of sale, voidable under the statute of frauds, does not affect his title thereto, unless the case falls within some exception which equity recognizes. (39 Cyc. 1772, and cases cited.)   It is necessary, therefore, for us to determine whether or not the facts of the case disclose any circumstance serving to lift Hambey's oral contract of purchase out of the statute of frauds on or before the date of the conveyance to Wood.

Hambey contends that his possession of the land was such a part performance of the contract as to take it out of the operation of the statute.   As pointed out by Lord Blackburn in *Maddison* v. *Alderson,* L. R. 8 App. Cas. 467, the cases allowing possession given and received to suffice to take a contract for the sale of an interest in land out of the statute of frauds have, in effect, construed the statute relative to agreements for the sale of land as if it contained the words ''or unless possession of the land shall be given and received.''   This construction of the statute has been adopted in California. (*Calanchini* v. *Branstetter,* 84 Cal. 249, [24 Pac. 149]; *Moulton* v. *Harris,* 94 Cal. 421, [29 Pac. 706].)   It only remains to consider whether or not the nature of Hambey's possession was such as to satisfy the requirement of the statute.   In considering this question, it is not to be forgotten that equity is after all bound by the statute of frauds and that in general relief is given against the statute only in two classes of cases, first, where to allow the statute to be set up would be to secure to the party relying upon it the fruits of actual fraud, and, second, where to allow the statute to be set up would place the party resisting it in an inequitable position, it appearing further that there is evidence just as good as a writing of the agreement between the parties.   (Fry on Specific Performance, 5th ed., secs. 584, 585.)   In the absence of actual fraud, the question here presented is whether or not Hambey's possession of the land at any time before the conveyance to Wood

was such as to place him in an inequitable position if precluded from proving his oral contract and whether or not it was also such as to furnish evidence just as good as a writing of the agreement between himself and Wise. **[1]** The inequitable situation which is contemplated by the cases holding that the vendee's possession will suffice to take a contract for the sale of land out of the statute of frauds is the vendee's liability to an action for trespass if he is not allowed to prove his oral contract. The evidence just as good as a writing contemplated by those cases is the visibility and notoriety of an actual possession manifesting clearly and unequivocally a new and distinctive ownership. (*Charpiot* v. *Sigerson,* 25 Mo. 63; *Ackerman* v. *Fisher,* 57 Pa. St. 460; *Arguello* v. *Edinger,* 10 Cal. 150; *Fulton* v. *Jansen,* 99 Cal. 587, [34 Pac. 331].) This court, in *Davis* v. *Judson,* 159 Cal. 121, 132, [113 Pac. 147, 152], expressly holding that a nominal or merely technical possession was not sufficient, laid down the rule that the "possession which must be taken in order to meet the equitable requirement of part performance, and warrant specific performance of the contract, is actual possession by the vendee. The ground upon which possession, as constituting part performance and authorizing specific performance, is supported, is that the vendee would be exposed to liability as a trespasser, if he could not invoke the protection of the contract. **[2]** The uniform rule, however, is that such possession must be an actual possession by the vendee; there must exist the physical fact of possession in him; a possession visible, notorious, and exclusive, such as manifests definitely and clearly that the vendee is claiming and asserting a distinctive ownership of the property, which is inconsistent with the right of possession or ownership in any other person. Less than this could not constitute a vendee a trespasser, and hence this actual possession must, under the authorities, exist to constitute such part performance as warrants the equitable interposition of a court of equity to decree specific performance." Even more directly to the point in the present case is the rule stated in Browne on the Statute of Frauds, 5th edition, section 473. "To allow a mere technical possession, not open to the observation of the neighborhood, and capable of being proved only by select and confidential witnesses, to be sufficient for obtaining a decree to enforce the contract, would manifestly

afford an opportunity for and an encouragement to dishonest testimony. Thus, where the vendor, having at the time a tenant in possession, makes a verbal sale of the premises, it has been held that, the tenant remaining in possession, and merely attorning to the purchaser, there was no such open and notorious change of·possession as would justify a court of equity in enforcing a contract; and that, at any rate, the attornment must be formal, public, and explicit.'' In support of the text the author cites *Brawdy* v. *Brawdy*, 7 Pa. St. 157, and *Johnston* v. *Clancy*, 4 Blackf. (Ind.) 94, [28 Am. Dec. 45].

Hambey never entered into physical possession of the land. Moreover, conceding that between March 17 and March 25, 1916, Wood's possession was the possession of Hambey, the fact remains that during that time Wood did not·make any physical entry upon the premises. Hambey's possession, if it may be called such, was technical possession by a tenant who for a long period of time prior to the creation of the tenancy had been occupying the land as the tenant of the vendor. [3] It is clear that this possession had not the essential character of the possession which will suffice to take an oral contract for the sale of land out of the statute of frauds. Neither by himself nor by his tenant did Hambey enter into a possession such as would render him liable to an action for trespass. No inequitable situation would, therefore, have been created by refusing to allow him to set up the contract of purchase. Neither by himself nor by his tenant did he enter into a visible and notorious possession manifesting clearly and unequivocally a new and distinctive ownership. There was, therefore, a total absence of any act referable to the contract such as, when coupled with the inequitable situation, gives a court of equity jurisdiction to enforce an oral contract for the sale of an interest in land. The facts of the case, accordingly, disclose no circumstance serving to lift Hambey's oral contract of purchase out of the statute of frauds on or before the date of the conveyance to Wood. It follows that Wood, having purchased the land in good faith and for value, does not hold title as an involuntary trustee for Hambey.

The judgment is affirmed.

Olney, J., Melvin, J., Wilbur, J., Lawlor, J., and Angellotti C. J., concurred.

SHAW, J.—I concur in the judgment, but I do not fully agree with all the reasons advanced by Justice Lennon. The rule is that the possession of land by the vendee, under an oral contract, in order to constitute part performance and render the contract enforceable, must be such as would make him liable for trespass, if he could not justify his possession except by the void oral contract of sale. This rule was adopted in equity when the common-law forms of action for trespass were in use. Under the common law, one who entered on land through his tenant to whom he had let the land for a term was liable, after recovery in ejectment by the true owner, to an action of trespass for mesne profits, and the fact that he had not personally entered on the land would not excuse him. Nor would it excuse him in an action of trespass for breaking and entering, if he had leased the land and authorized his tenant to enter thereunder. Therefore, the fact that one was in possession by his tenant would make him liable for trespass and would sufficiently answer that part of the equity rule in actions for specific performance. In this case both Hambey and Wood would have been liable to Wise for mesne profits if the sale to Hambey and Wood's possession under the lease could not have protected them.

It is clear also that this should be the rule. There are many cases, as of property built for rental purposes, where the only possession ever taken or contemplated by the parties to a sale is a possession accomplished by the attornment of the tenant in possession to the new owner. It has never been supposed that possession of such property, when so taken, could not constitute a sufficient part performance. In so far as the main opinion is inconsistent with the above I do not agree with it.