[S. F. No. 11000.   In Bank.—April 29, 1926.]

KEARNEY INVESTMENT COMPANY (a Corporation), Appellant, v. GOLDEN GATE FERRY COMPANY (a Corporation), Respondent.

[1] LEASES—ACTION TO RECOVER RENT—RESCISSION—DECREE QUIETING TITLE.—In an action to recover rent alleged to be due under a lease, the contention that the title to the property is in the state of California, instead of in the lessor, is not a collateral attack upon a decree quieting title to the property under the "McEnerney Act," as such a decree does not extend to any interest of the state in the property.

[2] ID. — LANDLORD AND TENANT — RIGHT OF TENANT TO QUESTION TITLE—FRAUD.—The rule that a °tenant is estopped to deny his landlord's title has the exception that where the lessee was induced by the false and fraudulent representations of the lessor to enter into the lease, the lessee is relieved from the estoppel.

[3] ID.—JUDGMENT AGAINST SAN FRANCISCO—EFFECT ON STATE.—In such an action, the fact that the city and county of San Francisco was a defendant in the quiet title suit does not make the decree therein binding upon the state of California, in the absence of evidence that said city ever had any interest in the property in question as trustee for the state or the public.

---

1.  See 22 Cal. Jur. 659.
2.  Fraud, misrepresenation, or mistake as affecting estoppel of tenant to deny landlord's title, note, 2 A. L. R. 359. See, also 15 Cal. Jur. 654; 16 R. C. L. 658.
3.  See 15 Cal. Jur. 200; 15 R. C. L. 1029.

[4] Id.—Evidence—Right to Show Title in State.—In such an action, the lessee has the right to show, as against the decree in the quiet title suit, that the title to the leased land is in the state of California.

(1) 34 Cyc., p. 614, n. 6 New.   (2) 35 C. J., p. 1231, n. 7.   (3) 34 C. J., p. 1030, n. 82, p. 1031, n. 88.   (4) 22 C. J., p. 911, n. 17.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph E. Bien and Werner Olds for Appellant.

Dudley D. Sales for Respondent.

Leo H. Susman and Chickering & Gregory, *Amici Curiae,* in support of Appellant's Petition for a Rehearing.

LENNON, J.—On January 14, 1921, the Kearney Investment Company, as lessor, entered into a written lease with the Golden Gate Ferry Company, as lessee, which written lease covered certain properties fronting on the bay of San Francisco and which admittedly is submerged land.

On August 3, 1921, the Golden Gate Ferry Company served notice in writing on the Kearney Investment Company that the lease entered into on January 14, 1921, was rescinded.

On October 5, 1921, the Kearney Investment Company commenced this action to enforce the payment of rent due under the lease for September and October, 1921, and for attorney's fees as in the lease provided. The Golden Gate Ferry Company filed an answer and cross-complaint denying that it ever took possession of the premises let and claiming that the Kearney Investment Company had no right, title, or interest in the property leased, and alleging that certain covenants in the lease were false, and had been fraudulently made for the purpose of inducing the Golden Gate Ferry Company to enter into the lease. The cross-complaint prayed that the lease be adjudged canceled and rescinded.

The covenants alleged to be false are as follows:

"The lessor covenants with the lessee that it is now seized in fee simple of the real property herein described and lease, which said lease does not expire until the 25th day of March, 1950."
designated as Parcels One and Three and that it holds the real property herein described as Parcel Two under a valid

The court below found that the Golden Gate Ferry Company had never taken possession of the premises; that no sum of money had ever become due under the lease; that the Kearney Investment Company did not at any time own the parcels described as one and three, in fee; and that it did not ever have a valid ninety-nine year lease to the parcel known as Parcel Two; that the Golden Gate Ferry Company had entered into the lease believing that the Kearney Investment Company had the title it represented itself to have in the property, and that the lease had been rescinded.

Judgment was rendered for the Golden Gate Ferry Company for costs and the lease was declared rescinded, null, and void. This appeal by the Kearney Investment Company is from that judgment.

The findings and judgment of the lower court are based, apparently, upon the theory that a McEnerney decree, dated September 5, 1915, introduced in evidence in the court below as part of appellant's chain of title, did not establish title in the appellant. It was respondent's contention in the court below, and it is its contention here, that title to the property in question is "in the State of California, the property being submerged land under the flow and ebb of the tide" and that the McEnerney decree did not adjudicate this title.

Over the objection of the appellant the court below admitted evidence offered by the respondent to prove that the title to the land in controversy was in the state of California.

The grounds of reversal urged by appellant are two. The first is that the setting up of title in the state by the respondent is a collateral attack upon the McEnerney decree. The second is that the court below committed error in admitting evidence that despite the McEnerney decree title to the land in controversy was in the state of California.

Respondent takes the position that the attempt to prove that the title to the property in question was in the state of

California was not a collateral attack upon the McEnerney decree; that the McEnerney decree was not binding upon the respondent to the extent that it precluded the respondent from proving the title to be in the state of California; that the McEnerney decree was not binding upon the state of California, although the city and county of San Francisco had been made a defendant in the McEnerney suit.

[1] It does not appear to us that the attempt of the respondent to prove in the lower court that the title to the property in question was in the state of California was a collateral attack on the McEnerney decree. Giving the McEnerney decree its full force and effect, it cannot be said to extend to any interest which the state of California might have in the property. (*Berton* v. *All Persons,* 176 Cal. 610 [170 Pac. 151].) The purpose of a collateral attack upon a judgment is generally to avoid the legal effect of the judgment by overthrowing it. In the instant case the McEnerney decree did not adjudicate the question of the state's interest in the property, and a claim that title to the property is in the state is not, therefore, an attempt to avoid the legal effect of the decree. No claim is made that title to the property was in a particular person. The McEnerney decree, in the instant case, is totally irrelevant as to the state's title, and the claim that title is in the state is not, therefore, an attack upon the McEnerney decree.

Section 11 of the McEnerney Act provides that the judgments thereunder are binding and conclusive upon "Every person who, at the time of the commencement of the action, had or claimed any estate, right, title or interest in or to said property or any part thereof, and upon every person claiming under him by title subsequent to the commencement of the action." (Stats. 1906, p. 78; Stats. 1909, p. 163; Stats. 1911, p. 6; Stats. 1913, p. 135.) Although the respondent under this section would be precluded from claiming any right, title, and interest in the property, it is not precluded by said section from showing that title to the property is in the state of California. [2] Neither is the defendant precluded from setting up such title by the general rule that a tenant is estopped to deny his landlord's title. There is a well-recognized exception to the general rule, namely, where the lessee was induced by the false and fraudulent representations of the lessor to enter into the

lease, such fraud and misrepresentations relieve the lessee of the estoppel to dispute the lessor's title. This is so because the relation of landlord and tenant arises out of contract, and this, like other contracts, may be avoided by fraud. (*Tewksbury* v. *Magraff*, 33 Cal. 237, 245; see, also, *Gray* v. *Whitla*, 70 Okl. 288 [2 A. L. R. 356, and note, 174 Pac. 239].)

[3] The fact that the city and county of San Francisco was a defendant in the McEnerney suit does not make the decree therein binding upon the state of California, in the absence of any evidence showing or attempting to show that the city and county of San Francisco ever had any interest in the property in question as trustee for the state or the public. There is no act of the legislature of this state by which any interest in the property in question is conveyed by the state to the city and county of San Francisco as trustee. Section 2524 of the Political Code transfers the possession and control of certain state property, of which the property in question is a part, to the Board of Harbor Commissioners.

[4] From this conclusion it must be concluded further that the lower court did not commit error in admitting evidence as against the McEnerney decree that title was in the state of California. Appellant, in addition to objecting to all evidence tending to impeach the McEnerney decree, objected to the introduction of certain official maps upon the ground that they were incompetent, irrelevant, and immaterial. These official maps, offered in evidence by the respondent, were not inadmissible upon the grounds stated. It was appellant's contention that a lease for ninety-nine years to certain waterfront lots, which include the lots in controversy, had been granted by the state of California to the city of San Francisco by an act of the legislature passed March 26, 1851 (Stats. 1851, p. 307); that by a subsequent act of the legislature of May 1, 1851 (Stats. 1851, p. 311), the reversionary interest in these same lots had been relinquished to the city of San Francisco, and that, therefore, title to the lots in controversy was not in the state of California. Appellant claims title to the land in controversy by virtue of an execution sale arising out of an action against the city of San Francisco. The act of 1851 which granted the leasehold interest to the city of San Francisco required the city to deposit with the Secretary of State and the Surveyor-

general a map of the correct boundary line as set forth in said act, distinctly and properly delineated by a red line. Apparently it is conceded that the ''Eddy Red Line Map,'' a copy of which was offered in evidence, was the official map so required. This map was introduced in evidence by the respondent to prove that the lots in controversy were not included in this grant by the state to the city of San Francisco. The Eddy Red Line Map does not show the blocks and lots west of Larkin Street in the city of San Francisco, although the red line indicating the boundary of the grant to the city is delineated thereon. When the Eddy Red Line Map is considered in conjunction with other and later official maps offered and received in evidence, the land in controversy is shown to be excluded from the land granted by the state by the act of 1851 to the city of San Francisco. The property in controversy is described in the lease to be property bounded by certain streets which appear in the later maps above referred to and, as previously indicated, do not appear in the Eddy Red Line Map. The later maps were offered in evidence as supplemental to and in aid of the Eddy Red Line Map and for that purpose, we think, they were admissible.

We are of the opinion, therefore, that (1) the McEnerney decree introduced into evidence in this case does not affect any title which the state of California may have had in the property in question; (2) proof of a breach of the warranty of the lease did not involve a collateral attack upon the McEnerney decree because the McEnerney decree did not adjudicate the state's title, and (3) there was no error committed by the lower court in admitting evidence showing title to the property in question to be in the state of California.

Judgment affirmed.

Shenk, J., Waste, C. J., Richards, J., Curtis, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.