[Civ. No. 7275.   Third Dist.   Mar. 6, 1947.]

YUBA RIVER SAND COMPANY (a Corporation), Plaintiff and Appellant, v. CITY OF MARYSVILLE et al., Defendants; JOE FOO, as Administrator, etc., et al., Defendants and Appellants.

Richard Belcher and Lingenfelter & Powell for Plaintiff and Appellant.

Rich, Weis, Carlin & Fuidge for Defendants and Appellants.

THE COURT.—In this suit to quiet title to real property the plaintiff has appealed from that portion of the decree

which awards to the defendant and cross-complainant, Joe Foo, as administrator, the possession of the east one-quarter of Lot One of the property involved. Said defendant has also appealed from that other portion of the decree which quiets title in plaintiff, by adverse possession, to the west one-half of the east one-half of said Lot One. The balance of the property, to which title was quieted in plaintiff, is not involved on this appeal. It is conceded that the city of Marysville claims no interest in the land.

By an amended complaint which was filed July 26, 1944, the plaintiff sought to quiet title by adverse possession to designated portions of Lots One and Two, Block One, Range "B" in Marysville, Yuba County, California, according to the official map thereof on file in the county recorder's office. By order of court, Joe Foo, as administrator of the estates of Juck Duck and Ju Sing, deceased, appeared and answered the complaint. The other defendants made no appearance. The answer denies the material allegations of the complaint, and affirmatively pleads an estoppel against plaintiff to deny its landlord's title to the east half of said Lot One, alleging that plaintiff took and held possession thereof under five successive leases from defendants and their predecessors in title, the true owners thereof from April 30, 1913, to May 1, 1940, and not otherwise, the last ten-year lease having been executed by said Joe Foo and his wife, in behalf of himself and his brothers and sisters, the owners of said land. At the same time the said Joe Foo, as administrator, also filed a cross-complaint alleging that for ten years immediately prior to the commencement of this action said defendants owned and occupied the east half of Lot One subject only to said lease to plaintiff. Said defendants ask for possession of the property and for a decree quieting title in them to the east half of said lot. Plaintiff denied the allegations of the cross-complaint.

After trial the court adopted findings determining that, for twenty years prior to the commencement of this action, the plaintiff owned and was in actual adverse possession of all of the property described in the complaint, except the east one-half of the east one-half of said Lot One, and for more than five years immediately prior thereto plaintiff paid all taxes thereon; that Joe Foo was duly appointed as administrator of the estates of Juck Duck and Ju Sing, deceased, and as such he was substituted, by order of court, as a party defendant in

this action; that, by a decree of distribution which was rendered in the estate of P. George, deceased, dated June 26, 1897, whatever interest said estate had in Lot One was conveyed to the heirs of said deceased, *but that said deceased had no title to any part thereof*, and that thereafter the heirs and successors in interest of P. George, deceased, quitclaimed to plaintiff, on June 28, 1928, whatever interest they had in said lot; that on October 28, 1875, one Dave Knight quitclaimed the east quarter of Lot One to Ah Chuck, who, on November 30, 1904, deeded to Juck Duck and his brother Ju Sing said Lot One; that Ju Sing died in 1906, leaving as his sole heir his brother Juck Duck, who thereafter occupied and exercised sole dominion over said Lot One until 1915, when he also died, leaving as his heirs a wife and seven children, including his sons, Joe Waugh and said administrator, Joe Foo; that on June 28, 1928, the plaintiff acquired title by quitclaim deed to the west one-half of the east one-half of said Lot One, ever since which time it held possession thereof adversely to the defendants with a claim of ownership thereof, and that it paid all taxes thereon for five years next preceding the commencement of this action; that from April 30, 1930, to May 1, 1940, plaintiff held possession of said east one-quarter of Lot One, as lessee under five successive leases executed by the asserted owners, the last of which leases expired on the last mentioned date, but that plaintiff continues to hold possession of said land. As conclusions of law the court found that plaintiff is the owner and entitled to possession of all the property described in the complaint, except the east one-half of the east one-half of said Lot One. The court further found that the defendant, Joe Foo, as administrator of the estates of Juck Duck and Ju Sing, deceased, is entitled to immediate possession of the east one-quarter of said Lot One, and that plaintiff has no right, title or interest therein. Judgment was rendered accordingly, quieting title in plaintiff to all of the property described, except the east one-quarter of said Lot One, and that the defendant, Joe Foo, as administrator of said estates is entitled to immediate possession of the east one-quarter of said Lot One, and that plaintiff has no right, title or estate therein, and no right to the possession thereof.

On appeal the plaintiff contends that the findings and judgment for the defendant Joe Foo, as administrator of the estates of Juck Duck and Ju Sing, deceased, awarding to him, as such

administrator, immediate possession of the east one quarter of said Lot One is not supported by the evidence, and that the court erred in failing to find and determine that said east one-quarter of Lot One was acquired by plaintiff by adverse possession.

At the trial, over repeated objections by the defendants that plaintiff was estopped from denying its landlord's title to the lot in question, since it acquired and held possession thereof as lessee of the defendants, evidence was received for the purpose of proving that plaintiff acquired title thereto by adverse possession, founded on a quitclaim deed, as a color of title.

We think the court did not err in receiving that evidence. The defendant waived that rule of estoppel by affirmatively alleging in a cross-complaint the ownership and right of possession of said land, and asking that title thereto be quieted in him. It is true that a lessee of land may not ordinarily deny his landlord's title without first surrendering possession of the property. But the present case appears to come within a well known exception to that general rule.

It is the established rule in California and in other jurisdictions that when a landlord not only seeks possession of real property, but also attempts to quiet title thereto as against the tenant, either by cross-complaint or otherwise, the tenant is not estopped from denying the landlord's title, but he may, under such circumstances, set up and establish any superior title which he may have acquired. (*Collier* v. *Johnson*, 79 Cal.App. 322 [249 P. 217]; *Hambey* v. *Wise*, 181 Cal. 286 [184 P. 9]; *San Juan Gold Co.*v. *San Juan Ridge Mutual Water Assoc.*, 34 Cal.App.2d 159, 168 [93 P.2d 582]; 35 C.J. 1233, § 575; 32 Am.Jur. 127, § 125; 89 A.L.R. p. 1295, note.) In 32 American Jurisprudence, at page 128, the rule applicable to the situation in this case is concisely stated as follows:

''Notwithstanding the general rule that a tenant in possession cannot maintain a suit against a landlord to litigate title, it has been held, in view of the rule stated above, that where, in such an action, the landlord files a cross complaint asking that title be quieted in him, the tenant is not estopped from disputing that title and showing title in himself.''

In the case of *Franklin* v. *Merida*, 35 Cal. 558 [95 Am.Dec. 129], quoting with approval from the case of *Tewksbury* v. *Magraff*, 33 Cal. 237, the reason for the exception to the gen-

eral rule that a tenant may not dispute the title of his landlord, is tersely stated at page 568 as follows: " 'It [the estoppel] was designed merely as a shield for the protection of the landlord, and not as a sword for the destruction of the tenant.' "

■ The California authorities recognize, as exceptions to the general rule, that when the landlord affirmatively sets up title in himself which he seeks to quiet, or when the tenant secures possession of the land before he accepts a lease which has expired, or when the lease is executed by fraud or misapprehension of the actual title, the tenant is not estopped from establishing his own title, even though it would otherwise amount to a denial of his landlord's title. (*Tewksbury* v. *Magraff*, 33 Cal. 237; *Davis* v. *McGrew*, 82 Cal. 135 [23 P. 41]; *Oneto* v. *Restano*, 89 Cal. 63 [26 P. 788]; *Pacific Mut. Life Ins. Co.* v. *Stroup*, 63 Cal. 150; *Kearney Inv. Co.* v. *Golden Gate Ferry Co.*, 198 Cal. 560 [246 P. 322].)

The foregoing exception to the general rule is stated in the Tewksbury case, supra, as follows:

". . . The estoppel rests upon considerations of public policy which, for obvious reasons, would be defeated in its purpose *if one who has been put in possession of land by another should be allowed to controvert the title of the latter* without restoring him to as good a condition as he was in before he parted with the possession. (*Glen* v. *Gibson*, 9 Barb. 638.)

"This general rule is, however subject to several exceptions. . . . So *if the tenant did not take possession under the lease, but was in possession at the time he took his lease, he may dispute the landlord's title* without first surrendering the possession; for not having received the possession from him, he is under no moral or legal obligation to restore it before adopting a hostile attitude, and he may have attorned, by mistake, to one who had no title." (Italics added.)

We conclude that, in this case, the defendants waived their right to rely on the plea of estoppel, by affirmatively asserting title to the east one-half of Lot One and by asking that title thereto be quieted in them.

The only controversy in this case is over the title to the east one-half of Lot One. The balance of the property described in the complaint is not in dispute.

The original complaint was filed in this case July 3, 1940. We are of the opinion the evidence fails to support the find-

ing of the court that plaintiff and its predecessor in title had been in actual, exclusive and *adverse possession* of the east one-half of Lot One, continuously for more than twenty years next prior to the filing of the complaint or that it had been in adverse possession for any period of time. The plaintiff concedes in its opening brief that "None of the parties to this action have any record title to any part of this property." The evidence fails to show adverse possession in plaintiff to the east one-half of Lot One. It follows that the judgment quieting title to the west half of the east half of Lot One is not supported by the evidence.

The only record title to the east half of Lot One, claimed by plaintiff, consisted of a quitclaim deed executed to it by the three surviving children of P. George, deceased, June 29, 1928. It does appear that the estate of P. George was distributed to the three children of said deceased, June 26, 1897. But Ray Phillips, Manager of the Yuba Title Guarantee Company, who examined the records for title to that property, testified as a witness for plaintiff, that "said P. George had no record title or interest in or to said lot one." The court found that "At the date of the death of said deceased [P. George], he had no title in or to any part or portion of said property and neither did his estate acquire any title to it." Indeed it is not contended that P. George ever had title to any of said property. The quitclaim deed was therefore absolutely valueless. Moreover, the plaintiff recognized the fact that it acquired no title by that quitclaim deed, for on December 13th, of the following year, it executed, as lessee, a written ten-year lease with the defendant, Joe Foo, covering the east half of Lot One, in consideration of the sum of $650 rental for each year, which it paid without any claim of title, or protest to the end of that term. Plaintiff had no record title as it concedes.

The record refutes the plaintiff's claim of adverse possession of the east half of Lot One. Plaintiff was incorporated in 1915, and engaged in the business of producing and marketing crushed rock and gravel. From April 30, 1913, to May 1, 1940, it occupied the east half of Lot One under five successive leases from the purported owners thereof, paying the stipulated rent therefor. The plaintiff constructed on the premises buildings and valuable improvements. The first two leases provided that plaintiff might remove all such improvements within ninety days from the expiration of such leases. The

last lease, executed by the defendant Joe Foo December 13, 1929, provided that plaintiff should pay all taxes levied on account of the buildings, equipment and improvements. Moreover, at the time of the expiration of the last lease, in May, 1940, the plaintiff, through its agents, went to Joe Foo, now the administrator of the estates of Juck Duck and Ju Sing, deceased, and offered to buy the land for $2,500, which offer was refused. Mr. W. T. Ellis, the Vice-President and Manager of the corporation, testified that "We made a proposal to buy it." The defendant, Joe Foo, testified that when the last payment of rent was made in 1940, Mr. Ellis asked him if they wanted to renew the lease; that when Foo told him they did want to renew it, Mr. Ellis said they could not afford to pay $650 rental per year, but that the corporation would renew the lease for ten years more at $300 rental per year, and he then offered to purchase it for $2,500. The offer to buy the property was refused. Foo told him they would not rent it for $300 per year, but that they would accept $500 per year. The lease was not renewed. Within about two months thereafter this suit was commenced.

It is true that the property in question was assessed to plaintiff and that it paid taxes thereon for more than five years immediately preceding the commencement of this action. But the property was also assessed to the defendants and their predecessors who have paid taxes thereon ever since 1898, with the exception that the records show an occasional omission in either the description or the receipt of taxes. The city assessor of Marysville testified that from 1930 to 1939, Lot One was assessed both to Joe Waugh, the son of Juck Duck, deceased, and to the plaintiff. He said that it was a double assessment. When asked how the "change in the assessment roll there in 1929" occurred, he replied, "It is my recollection that Mr. Ellis [the manager of plaintiff corporation] wanted to have me change it."

The record shows that the Chinese, Juck Duck, was also sometimes called Ju Duck, and Joe Bong and Joe Hin. He had a wife, named Loo She, three sons and four daughters. He also had one unmarried brother, named Ju Sing, who was assumed to have died during the earthquake at San Francisco in 1906. Ju Sing left surviving him neither a wife nor heirs other than Juck Duck, his only brother. Joe Foo, the son of Juck Duck, was appointed administrator of his uncle's estate.

The title to the east one-half of Lot One, in 1861, was in Jacob Myers. March 5, 1867, it was conveyed on sale for delinquent taxes, by sheriff's deed, to C. C. Samueio. From that date there is a lapse of record title until October 28, 1870, when the east one-quarter of Lot One was conveyed by David Knight to Ah Chuck. November 15, 1904, the east half of that lot was deeded by Ah Chuck to the brothers Ju Duck and Ju Sing. It does not appear how Ah Chuck acquired title to the other one-quarter interest. The two brothers, Juck Duck and Ju Sing, conducted a laundry as partners on the property in question from 1904 to 1906, when Ju Sing died, and his brother Juck Duck continued to operate that business. Juck Duck executed the first lease of a part of that lot to the plaintiff April 30, 1913. Juck Duck died in 1915 and his son, Joe Waugh, was appointed administrator of his estate. The second lease of the land in 1917, the third lease in 1920, and the fourth lease in 1924, were executed by Joe Waugh to the plaintiff. The last three leases covered all of Lot One. The estate of Juck Duck was distributed to his wife Loo She, and to his three sons and four daughters. The wife transferred her interest to her children.

Upon proceedings duly had the defendant Joe Foo was appointed as administrator of the estate of Juck Duck, deceased, and of the estate of Ju Sing, deceased, and said administrator was subsequently made a party defendant, and appeared and answered the amended complaint in behalf of said estates.

From the foregoing evidence, assuming from the pleadings in this case that the defendants waived their right to assert that plaintiff was estopped from denying its landlord's title to the disputed portion of the land in question, and that plaintiff was entitled to show whatever adverse title it possessed, we conclude that there is no substantial evidence of adverse title in plaintiff to the east half of Lot One, and that the court erred in determining that title to the west half of the east half of that lot is in plaintiff by adverse possession or otherwise. ■ Adverse possession must be hostile to the true title. It must be actual, open, notorious, continuous, uninterrupted and exclusive, with a claim of right and the payment of taxes for the statutory period. (*Sheehan* v. *All Persons,* 80 Cal.App. 393, 401 [252 P. 337] ; 2 C.J.S. 520, § 8.) ■ The true owner must have actual knowledge of the hostile claim or such constructive notice as would place him on inquiry. (2 C.J.S. 558, § 45.) ■ The burden is on one who

claims by adverse possession to prove all the essential elements by clear and satisfactory evidence. (*Brown* v. *Bachelder*, 214 Cal. 753, 757 [7 P.2d 1027]; *Clarke* v. *Clarke*, 133 Cal. 667 [66 P. 10]; 1 Cal.Jur. 636, § 95; 2 C.J.S. 814, § 214.) ■ A quitclaim deed may furnish some evidence of a color of title tending to show hostility of possession. (2 C.J.S. 580, § 60 b (2) c.) ■ Color of title merely means a semblance of title as distinguished from paramount or actual title. (2 C.J.S. 580, § 60 b (2).) Naturally, the value of a quitclaim deed depends upon the record title upon which it is founded. In the absence of evidence to refute the presumption that it is founded on some record title, it may furnish a prima facie showing of color of title indicating hostility of possession. ■ But when the evidence shows, as it does in the present case, that the heirs of a deceased person who executed the quitclaim deed, had no title because the deceased had no title to the property, it furnishes no substantial evidence of hostility of possession. Under such circumstances it has been held that a quitclaim deed is valueless and ineffectual as evidence of adverse hostility of possession. (*Woods* v. *Banks*, 14 N.H. 101.) We are convinced the quitclaim deed upon which the plaintiff in this case relies as evidence of color of title and of hostility of possession, was adequately rebutted by evidence to the contrary. The record shows that for fifteen years prior to acquiring that deed the plaintiff recognized the rights of the owners of the land by contracting with them as lessee in four successive leases, and by renewing its lease with the defendants Joe Foo and Leta Foo, almost immediately after receiving that quitclaim deed, for ten years more at the stipulated rental of $650 per year, which rent was paid to the end of that term without protest and without calling the attention of the lessors to its claim of title by quitclaim deed or otherwise. The last lease refutes the claim of hostility of possession and of adverse title. It was a recognition of the true owner's claim of rights and title. It reserved an option for plaintiff to buy the land from the lessors for $4,500 at any time during the term of the lease. Plaintiff also covenanted to pay all taxes levied or assessed on the buildings or improvements which it had constructed on the property. The lease provided that plaintiff would not "remove earth sand or materials forming or constituting a part of said premises." All of those stipulations are inconsistent with a claim of adverse possession on the part of plaintiff.

For the foregoing reasons we conclude that the record is devoid of evidence to support the findings and judgment quieting title in plaintiff to the west half of the east half of Lot One of Block One, Range "B" in Marysville, as decreed by the court.

For the reasons heretofore stated we are also of the opinion the findings and judgment granting the defendant and cross-complainant Joe Foo, as administrator of the estates of Juck Duck, deceased, and Ju Sing, deceased, the right of immediate possession of the east one-quarter of Lot One of the property described in the complaint, are adequately supported by the evidence, and that the said Joe Foo, as administrator of the estates of Juck Duck and Ju Sing, deceased, is, for the same reasons, entitled to judgment for possession of the west one-half of the east one-half of said Lot One. In spite of the fact that defendants' chain of title to the entire east half of Lot One is not complete, their title, as against the plaintiff, who was their lessee and is wrongfully withholding possession after the termination of the lease, entitles them to possession of the east one-half of that lot. Certainly the plaintiff has shown no right which entitles it to retain possession.

The defendant, Joe Foo, as administrator, was authorized to maintain the action in behalf of the heirs of the deceased persons for possession of the land. A suit for possession of real property may be maintained for or against an executor or an administrator in all cases in which the testator or intestate would have been proper parties. (Prob. Code, § 573; 9 Cal.Jur. 1038, § 47; *Emeric* v. *Penniman,* 26 Cal. 119.)

The judgment quieting title in plaintiff by adverse possession to the west one-half of the east one-half of Lot One is reversed, and the court is directed to render judgment for the defendants and cross-complainants awarding defendant Joe Foo, as administrator, the right of immediate possession thereof.

The judgment in favor of defendants awarding the defendant and cross-complainant, Joe Foo, as administrator, immediate possession of the east one-half of the east one-half of Lot One is affirmed.

The respondent and appellant, Joe Foo, as administrator, may recover costs on these appeals.