Filed 8/16/16  Roberts v. Haro CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MARIA D. ROBERTS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT HARO,<br><br>    Defendant and Respondent. | B266157<br><br>(Los Angeles County<br>Super. Ct. No. LC100835) |

APPEAL from an order of the Superior Court of Los Angeles County.  Russell S. Kussman, Judge.  Affirmed in part, reversed in part, and remanded with directions.


Steinhart Law Offices and Terran T. Steinhart for Plaintiff and Appellant.


Gabrielsalomons, Jonathan G. Gabriel and David S. Mayes for Defendant and Respondent.


_____

Plaintiff Maria D. Roberts appeals from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrers of defendant Robert Haro to Roberts's action to enforce an oral employment agreement that was made in conjunction with a written agreement to sell her house to Haro. We conclude Roberts has raised new factual allegations that warrant an opportunity to amend her pleading and remand for that purpose.

## FACTS AND PROCEDURAL HISTORY[1]

Maria D. Roberts owned a home in Tarzana that she leased to Robert Haro. Roberts was having financial difficulties and arranged for a lender-approved short sale at the price of $480,400. Two potential buyers—Haro and another man—submitted offers to buy Roberts's home. Both potential buyers offered to buy the property for $480,400. Roberts advised Haro and the alternative potential buyer that she had received offers from both of them, "which created competition between them to become the buyer of the Wilbur property."

The price of the property did not increase. Instead, "in addition to offering to purchase [the Wilbur] property at the aforesaid price [of $480,400] the alternative buyer orally offered to provide [Roberts] with an additional $100,000 in some manner that would be legal [while Haro] orally offered to procure [Roberts] an engagement as a marketing program/project manager with a third party . . . with payment for her services in one or more projects to be provided by [Haro] in the sum of $90,000[, with] the engagement to be for at least six months at no less than $1,300 per week."

On May 8, 2013, Roberts accepted Haro's offer. A few days later, Haro orally agreed that Roberts would perform project management and marketing services for a company called Encon for a period of six to 11 months. In exchange, Roberts would be

---

[1] Our statement of facts comes from the allegations of Roberts's operative second amended complaint which, as set forth in our standard of review, we must accept as true.

paid $90,000 funded by Haro through Encon, although she would be responsible for mileage and other business expenses.[2] The sale of the house was completed two months later through the usual process of a written agreement handled through escrow.

In July 2013, Haro gave Encon $5,000 as a start on Roberts's compensation. One month later, however, Haro would not commit to paying the remainder of Roberts's salary. Encon did pay Roberts the $5,000 Haro had provided. Haro assured Roberts that he would fund the rest of her salary, but in September 2013 repudiated the deal. Encon ended the employment relationship with Roberts. Roberts then sued Haro, alleging that he breached their oral agreement for her employment. Her complaint included a cause of action for fraud, alleging that Haro never intended to honor their oral employment agreement, the agreement was intended to dupe her into selling the house to him and not the other prospective buyer, she justifiably relied on Haro's assurances, and, as a result, she lost out on the employment opportunity that the other potential buyer had promised.

Haro demurred to the second amended complaint, contending that the oral agreement to employ Roberts was an integral part of their written agreement for the sale of Roberts's house and, as such, was barred by the statute of frauds. (Civ. Code, § 1624, subd. (a)(3) [agreements for sale of land must be in writing].)[3] Anticipating that Roberts might try to avoid the statute of frauds based on her part performance of the agreement, Haro argued that Roberts failed to plead facts showing the requisite unconscionable injury under that doctrine. Instead, he contended, she had unclean hands by going behind her lender's back to obtain additional compensation outside the lender-approved short sale. Haro contended that the fraud cause of action was barred because Roberts was trying to enforce a contract that violated the statute of frauds, and because she failed to plead fraud with specificity.

---

[2] Haro's relationship to Encon is not alleged in the complaint or otherwise explained in the appellate record.

[3] Neither the record nor Roberts's appellate briefs explain the disposition of her original and first amended complaints.

In opposition to the demurrer, Roberts argued that the statute of frauds did not apply because: (1) the oral employment agreement was separate and divisible from the real estate purchase agreement: (2) Haro was equitably estopped to raise the statute of frauds because Roberts had changed her position by passing on the other prospective buyer's purchase and employment offers; and (3) the agreement was partly performed when the sale closed and Haro paid the purchase price. Roberts also contended the fraud cause of action was viable in part because the statute of frauds does not operate to preclude fraud claims, and in part because she adequately alleged the elements of that tort.

Haro's reply asserted that Roberts could not rely on any equitable exception to the statute of frauds because no unconscionable injury would result from denying enforcement of the contract as she was attempting to defraud the bank by getting additional compensation for the sale of her home outside of escrow. Haro fleshed out his unclean hands argument by quoting a portion of the Federal National Mortgage Association's (FNMA) website concerning short sales and the prohibition against undisclosed side agreements: "For a real estate transaction to be completed, all lien holders must sign off. In this fraud, one party (real estate agents involved, first mortgage lenders, second lien holders) might make certain demands outside of the escrow transaction before signing off, such as asking that real estate agents reduce their commissions or other parties (short sale negotiators, attorneys, etc.) get reduced pay or no pay. [¶] While these arrangements sound innocent enough, they are actually 'off the books' transactions, meaning they are not being recorded in the HUD-1 Settlement Statement. Someone will profit from that hidden cash." Haro did not request the court to take judicial notice of the FNMA website or any FNMA regulations.

In its minute order, the trial court said it was sustaining the demurrers without leave to amend for the reasons stated in the moving papers. Judgment for Haro was then entered.

4

**STANDARD OF REVIEW**

When reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all properly pleaded facts, and examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory regardless of the label attached to a cause of action. (*Fischer v. Time Warner Cable, Inc.* (2015) 234 Cal.App.4th 784, 790.) We do not assume the truth of contentions, deductions, or conclusions of fact or law, and may disregard allegations that are contrary to the law or to a fact that may be judicially noticed. (*Ibid.*) We also accept as true all facts that may reasonably be inferred from those expressly alleged, and read the complaint in context to give it a reasonable interpretation. (*Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, 658.) Whether leave to amend should have been granted is reviewed under the abuse of discretion standard. (*Fischer,* at p. 790.)

If there is a reasonable possibility that a defective pleading can be cured by amendment, then the trial court abused its discretion by sustaining a demurrer without leave to amend. The burden of showing such a reasonable possibility lies with the appellant. (*Murphy v. BDO Seidman* (2003) 113 Cal.App.4th 687, 691-692.)

**DISCUSSION**

*Roberts Has Alleged New Facts, Which Warrant Leave to Amend*

The statute of frauds requires that certain contracts, including those for the sale of realty, be in writing. (Civ. Code, § 1624, subd. (a).) The statute requires either a written contract or a note or memorandum signed by the party against whom the contract will be enforced. (*Ibid.*; *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1108.) Because the statute of frauds is designed to prove that a contract exists, the writing need mention only certain essential or meaningful terms. Ambiguities can be resolved by extrinsic evidence. (*Benson, supra*, at p. 1104.)

5

We agree with Haro that the alleged oral agreement cannot be separated from the real estate purchase agreement and therefore falls within the statute of frauds. However, we conclude that at this stage of the proceedings, Roberts has alleged new facts with which she should be allowed to amend her contract cause of action.

Under the doctrine of partial performance, enforcement of an oral contract that falls within the statute of frauds is permitted when the party seeking to enforce it has partially performed, so long as the performance unequivocally refers to the contract or clearly relates to its terms. (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 555 (*Secrest*).) Such conduct satisfies the statute of fraud's evidentiary function by confirming that an agreement was reached. (*Ibid.*)

In addition to partial performance, the party seeking to enforce the contract must have changed position in reliance on the oral agreement so that application of the statute of frauds would result in an unjust or unconscionable injury that effectively amounts to fraud. (*Secrest, supra*, 167 Cal.App.4th at p. 555.)

Roberts has alleged for the first time on appeal that she can amend her complaint to demonstrate facts that satisfy the partial performance doctrine. Roberts has adequately alleged that she partially performed the oral agreement by working for Encon for about one month before Haro backed out of the deal, an act that clearly relates to the terms of the alleged oral agreement. She also alleged that Haro partly funded the employment by paying Encon $5,000 to cover some of her work. Roberts changed position in reliance on the oral agreement by passing on the other prospective buyer's offer to purchase her house and provide her with work at his company for $10,000 more than the $90,000 Roberts had agreed to cover.

However, Haro challenges application of the part performance doctrine on the contention that no unconscionable injury has been alleged sufficient to deny application of the statute of frauds because Roberts was seeking to defraud her lender by personally garnering close to $100,000 in additional compensation above the approve short sale price of her home.

6

Roberts contends, for the first time on appeal, that she can amend her pleadings to allege that she and Haro were concerned about the legality of the agreement, and split the cost of legal fees when seeking out a lawyer who advised them the agreement was in fact lawful. That proposed allegation raises a possibility that the side agreement was legal. Taken as a whole, we believe the potential illegality of the side agreement requires an affirmance of the order sustaining the demurrer, but a reversal as to the order sustaining the demurrer without leave to amend. In short, at this stage of the proceedings, we are unable to determine whether the side agreement was either illegal or fraudulent, and conclude that Roberts should be given leave to amend to allege its legality if she can. We therefore remand for Roberts to file a new pleading that adequately alleges the lawfulness of the side agreement.

We reach the same result as to the fraud cause of action. Haro contended below that Roberts's fraud cause of action was barred because it was based on an agreement that violated the statute of frauds. First, Haro is legally wrong. (*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 [fraud action not barred when allegedly fraudulent promise is unenforceable under the statute of frauds].) Second, the contention fails because we hold that Roberts has indicated she can amend the complaint in a manner that might allow her to invoke the partial performance exception to the statute of frauds, as outlined above.

We disagree insofar as Haro contended below that Roberts failed to adequately allege the required elements of a fraud cause of action. Fraud requires: an intentional misrepresentation of material fact with knowledge of its falsity and intent to induce reliance, actual and justifiable reliance, and damages proximately caused by the reliance. (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230-231.)

Roberts alleged that Haro's promise to pay for her services at Encon was made without the intention to perform in order to induce her to sell her house to him, that she agreed to sell her house to Haro in justifiable reliance on that promise, that the other prospective buyer was ready, willing, and able to perform his promise to secure her

7

employment, and that as a proximate result she lost out on that other opportunity. These allegations are sufficient. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039.)

The dissent opens with the view that the agreement between the parties is "plainly dishonest," and continues with its assertion that by providing that Roberts would receive a salary for work to be performed by Encon, the contract was as a matter of law unlawful and Roberts, therefore, may not enforce it. Specifically, the dissent has determined that the contract defrauded Roberts's lender. This accusation is found on three occasions in the dissent. ("It seems plain to me that plaintiff made an agreement with defendant to defraud the lender; and the three-way arrangement among plaintiff, defendant and Encon was a ploy to hide the money trail." (Dis. opn. *post*, at p. 2.) "[T]he entire arrangement was for the purpose of defrauding plaintiff's lender." (*Id*. at p. 3.) "To the contrary, the purpose of the oral contract was to enable plaintiff to receive $90,000 outside of escrow and by so doing to defraud her lender which had agreed to grant her the benefits of a short sale." (*Id*. at p. 5.)

What is missing from this conclusion is any authority that this is so. The dissent clearly does not approve of the transaction and we agree that it is unusual, but is it unlawful or a fraud? At oral argument, Haro's counsel was specifically asked if his position was that the contract was unlawful. He declined to take that position. In his respondent's brief, Haro refers us to a website of the Federal National Mortgage Association (Fannie Mae) but does not ask us to take judicial notice of any Fannie Mae rules or regulations. In addition, the examples from the website do not deal with the current situation.

It may very well be that this type of transaction is unlawful and should not be enforced. But the parties in the current appeal assiduously stayed away from the issue, and Haro in particular disavowed any intent to go down that road. In any event, we are not prepared to pursue on our own a theory that neither party has asserted. Perhaps, the fact that Roberts started work for which she was paid defeats such a claim. It thus seems appropriate to permit Roberts to amend her complaint to raise expressly the lawfulness of

8

the transaction and what impact that might have on issues such as part performance and estoppel.

## DISPOSITION

We affirm the order to the extent it sustained the demurrers to Roberts's second amended complaint, but reverse as to that portion of the order sustaining the demurrers without leave to amend. The matter is remanded to the trial court to permit Roberts leave to amend and for further proceedings. Appellant shall recover her appellate costs.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.

9

**Grimes, J., Dissenting.**

Respectfully, I dissent.

In my view, the allegations of the operative complaint cannot be cured to bring this case within an exception to the statute of frauds. Plaintiff seeks to enforce an oral side agreement she made with the buyer of her home in a short sale by which she was to receive $90,000 outside of escrow. To me, the agreement is plainly dishonest, and thus, equity will not prevent application of the statute of frauds.

Plaintiff's home was encumbered by first and second deeds of trust in favor of Bank of America, and a third deed of trust in favor of Rushmore Capital Partners, LLC. Plaintiff defaulted on her mortgage payments and the three deeds of trust "went into default." Plaintiff made a "payoff agreement" with Rushmore and a short sale agreement with Bank of America. In a short sale, a homeowner who is behind in making mortgage payments may make an agreement with the lender to sell the home for less than the balance remaining on the mortgage, with the lender forgiving any remaining loan balance.

Plaintiff engaged the services of a real estate broker who brought plaintiff two offers to buy the property at the price approved by Bank of America. But this was not enough for plaintiff. Plaintiff advised defendant and the other potential buyer that she had received offers from both of them, "which created competition between them to become the buyer." Both rose to the bait. The other potential buyer offered plaintiff $100,000 "in some manner that would be legal, such as his possibly directly engaging her as a project manager for one of his own business projects." (Ahem.) The other, defendant here, offered plaintiff $90,000 to be paid to an unnamed third party over a period of six months, in exchange for plaintiff rendering unspecified marketing services to the unknown third party. Defendant would pay the third party, who would remit payment to plaintiff at the rate of "no less than $1,300 per week."

1

On May 8, 2013, plaintiff orally accepted defendant's oral offer and signed a written purchase agreement and escrow instructions the next day. Within five days after that, plaintiff and defendant orally modified their oral agreement for the payment of $90,000 outside of escrow, including that the money would be "provided to [third party] Encon by defendant . . . payable in advance in weekly, monthly or quarterly installments based on invoices to be provided by plaintiff." Escrow closed on July 2, 2013.

It was not until late June or early July 2013 that plaintiff and unnamed executives at the third party, Encon, began to discuss "the parameters of the Encon marketing project/program that plaintiff was to help formulate, and which she was to manage." In other words, plaintiff and the third party did not know one another or communicate at all to discuss job responsibilities, compensation and other basic terms until about seven weeks after plaintiff agreed to sell her home to defendant.

It seems plain to me that plaintiff made an agreement with defendant to defraud the lender; and the three-way arrangement among plaintiff, defendant and Encon was a ploy to hide the money trail. Who ever heard of a legitimate employer making such an arrangement? How could plaintiff have believed in good faith that the arrangement was above board? The general rule of liberal allowance of pleading amendment does not require us to turn a blind eye to the reality of the facts plaintiff alleged.

1.      **The First Cause of Action for Breach of Oral Contract**

Plaintiff invokes equity to save her breach of contract claim from the statute of frauds. Plaintiff argues "[t]he doctrine of part performance by the buyer is an exception to the statute of frauds only as applies to contracts for the sale or lease of real property." The doctrine of part performance permits a real estate purchaser to enforce an oral contract to buy real property (i.e., take the contract out of the statute of frauds) when the buyer has taken actual, visible and exclusive possession that unequivocally manifests a new and distinctive ownership of the property. (*Hambey v. Wise* (1919) 181 Cal. 286, 290-291.) The doctrine applies when there is a claim that the buyer cannot enforce a contract that was not in writing. The doctrine does not apply when there is no dispute that the buyer acquired legal title to the property. Plaintiff does not dispute that

2

defendant has legal title and possession of her property. Plaintiff's theory that defendant partly performed the agreement to pay her $90,000 outside of escrow, and she partly performed by her dealings with Encon, simply has nothing to do with the doctrine of part performance as an exception to the statute of frauds.

Plaintiff is also mistaken in her assertion that " 'unconscionability' is not an element of the part performance exception." Unconscionability is an element of every expression of equitable estoppel. (*Anderson v. Stansbury* (1952) 38 Cal.2d 707, 715 ["Nor may plaintiffs successfully invoke the doctrine of part performance to overcome the bar of the statute of frauds. Before a party can be estopped to assert the statute due to the other's part performance, it must appear that a sufficient change of position has occurred so that the application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud."].)

I cannot conceive a scenario by which a court would force defendant to pay plaintiff $90,000 for services she did not render to Encon, where there was no agreement between plaintiff and Encon as to the terms of her engagement, and the entire arrangement was for the purpose of defrauding plaintiff's lender. Plaintiff proposes to add allegations that she and defendant consulted an attorney who advised them that the oral agreement to pay plaintiff $90,000 with respect to the short sale was not improper because plaintiff was earning it by working for an employer. Accepting as true that the parties consulted counsel who gave such poor advice, plaintiff cannot allege she suffered unconscionable injury, or serious change of position, or that defendant was unjustly enriched. And plaintiff cannot cleanse her hands by wiping them on the cloak of counsel. (See generally *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 54, quoting *Walker v. Jensen* (1949) 95 Cal.App.2d 269, 274 [advice of counsel must be sought in good faith and not as a mere cloak to protect oneself against suit].)

I find this case is analogous to *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048 (*Blain*) where the plaintiff, a doctor, filed a legal malpractice action against his attorney who had represented him in an earlier medical malpractice lawsuit. Plaintiff claimed that because he followed his attorney's advice to lie during a deposition, he was exposed to

3

greater liability which injured him and his wife. The Court of Appeal affirmed the trial court's sustaining of the defendant's demurrer without leave to amend, reasoning that plaintiff had no cause of action for injury caused by his own misconduct. (*Id.* at pp. 1062-1063.) The plaintiff was precluded from asserting the defense of reliance on advice of counsel due to the doctrine of unclean hands. (*Id.* at pp. 1063-1064 ["Even the most naive must know that lying under oath is illegal. A doctor who lies under oath about the incident for which he is being sued must know that if the lie is discovered it will adversely affect his defense."].)

Likewise, even the most naive must know that an oral agreement to receive significant sums outside of escrow in a short sale under a sketchy three-way employment agreement is unlikely to be favorably construed when discovered. Just like the plaintiff in *Blain*, plaintiff's own allegations demonstrate as a matter of law she did not act in good faith so as to fall within any exception to the statute of frauds.

## 2. The Second Cause of Action for Promissory Fraud

Plaintiff contends she stated a cause of action for promissory fraud under *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18 (*Tenzer*). *Tenzer* disapproved the rule of *Kroger v. Baur* (1941) 46 Cal.App.2d 801 and its progeny that an action for fraud cannot be maintained where the allegedly fraudulent promise is unenforceable as a contract due to the statute of frauds. *Tenzer* reasoned in part that the rule of *Kroger* was "inconsistent with the general rule ' "that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme." ' " (*Tenzer*, at p. 29.) *Tenzer* was recently cited with approval in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1183 (*Riverisland*). Thus, *Tenzer* and *Riverisland* establish that the statute of frauds should not be applied so as to facilitate a fraud.

*Tenzer* and *Riverisland* do not save plaintiff's cause of action for promissory fraud because plaintiff was complicit with defendant in the scheme by which plaintiff would receive significant sums outside of escrow that otherwise could have been applied to

4

reduce the mortgage debt the lender agreed to write off. No fraud will be perpetrated upon plaintiff by the court's refusal to enforce the oral contract alleged here. To the contrary, the purpose of the oral contract was to enable plaintiff to receive $90,000 outside of escrow and by so doing to defraud her lender which had agreed to grant her the benefits of a short sale.

I would affirm the judgment.


GRIMES, J.